# Staunton

## William R. Hoover, Administrator v. J. P. Neff and Son, Inc.

September 6, 1944.

Record No. 2802.

Present, All the Justices.

The opinion states the case.

*Forest T. Taylor, Charles Curry, J. Sloan Kuykendall* and *R. Gray Williams*, for the plaintiff in error.

*John D. White* and *C. E. Hunter*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action of trespass on the case was brought by plaintiff in error against the defendant corporation to recover damages for the death of his daughter, Rosa Lee Hoover. There was a trial by a jury which resulted in a verdict in favor of the plaintiff. On motion of the defendant, the verdict of the jury was set aside and judgment was entered

for the defendant pursuant to the provisions of section 6251 of the Code of Virginia.

The facts pertaining to the injury complained of may be thus stated:

The defendant, a Virginia corporation, owned and operated large and valuable commercial orchard properties situated in the county of Augusta; it also owned and operated a number of motor trucks in connection with the business, and employed a number of employees to operate the trucks in connection with its orchard operations. On the night of October 18, 1941, one of its trucks, driven by one Frank Burford, was left unattended, in a disabled condition, standing in the direct line of travel on State highway No. 254 at a point about three miles west of the city of Staunton. Contrary to the statute, no flares or lights were placed by Burford to warn travelers of the dangerous situation. A sedan, operated by William Roy Hoover and occupied by decedent (an infant approximately two years of age) and several guests, collided in the darkness with the truck of defendant and caused the death of decedent and three other persons. While conceding that the truck involved in the accident was its property and that the truck was being operated by Frank Burford on the night in question, defendant contends that Burford was not its employee or servant at and immediately prior to the accident, and that he was not acting within the scope of his employment while operating the truck involved in the accident.

At the conclusion of plaintiff's evidence, defendant moved to strike the evidence on the ground that plaintiff had failed to show that Burford was acting for and on the business of defendant at the time of the accident and that the use of the truck by Burford was merely permissive.

The motion to strike the evidence was overruled. At the conclusion of the evidence, defendant renewed its motion to strike plaintiff's evidence and enter judgment for the defendant. This motion was also overruled, and the case was submitted to the jury upon instructions offered by plaintiff and defendant and the following instruction given to the jury by the court upon its own motion:

"The court instructs the jury that leaving the defendant's truck on Route 254 at dusk, or just as nightfall was coming, without flares or lights and unattended, was negligence as a matter of law.

"And if they believe from the evidence that, at the time of committing the said negligence, the said Burford was an employee of the defendant and acting within the scope of his employment and about his employer's business, and not acting in conflict with material orders and instructions given him by the defendant, either oral or verbal, and communicated to him, then they should find for the plaintiff."

At the conclusion of the case defendant moved the court to set aside the verdict of the jury, on the ground that it was contrary to the law and the evidence and to enter final judgment for defendant. This motion the court sustained.

The prevailing rule relative to the motion to strike out a plaintiff's evidence has been clearly stated by Mr. Justice Epes in *Green* v. *Smith*, 153 Va. 675, 151 S. E. 282, as follows:

"In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced or contrary to reason. *Dove Co.* v. *New River Coal Co.*, 150 Va. 796, 143 S. E. 317; *Limbaugh* v. *Commonwealth*, 149 Va. 393, 140 S. E. 135; *Goshen Furnace Corp.* v. *Tolley's Admr.*, 134 Va. 404, 114 S. E. 728."

In *Mutual Life Ins. Co.* v. *Brown*, 137 Va. 278, 119 S. E. 142, it is said that, "it has been repeatedly said by this court that where there is some evidence to support the verdict, it should not be set aside simply because the court, if on the jury, would have found a different verdict. To warrant setting aside the verdict it must be either without evidence to support it, or plainly contrary to the evidence."

The action of the court in twice refusing to strike the evidence of the plaintiff and in giving to the jury its own instruction, *supra*, strongly indicates the doubt in the mind of the court on the question of striking plaintiff's evidence. Unless the record demonstrates that the evidence offered by the plaintiff is inherently incredible, then it is the province of the jury, and not of the court, to pass upon the sufficiency thereof.

As we view the case, its determination turns upon these two questions: First, was Burford the employee and agent of the defendant at the time of the accident which resulted in the death of Rosa Lee Hoover? Second, was the truck involved in the accident the truck known as "Betsy" which a preponderance of the evidence shows was the truck Burford was authorized to operate?

In our opinion the answer to the first question must be in the affirmative, as is clearly shown by the following facts and circumstances: It is in proof that defendant agreed with its employees to transport them in its own trucks from their homes to their places of work and back, and, therefore, it was a part of defendant's business to transport Burford to his home on the night of the accident. That Burford was on his way home the night of the accident is beyond dispute.

In considering the second question, it is well to set forth the contention of defendant that Burford, in direct disobedience of the order given him by his superior, did not on the night in question drive the truck known as "Betsy," but did drive a prohibited truck described in the brief of defendant as follows: "This truck had no fan belt, its radiator would not hold water, it had no generator, its brakes and steering gear were in only fair condition, and it had no license tags."

The evidence on the identity of the truck operated by Burford is conflicting. The jury having resolved this conflict in favor of the plaintiff, we are only concerned with its sufficiency to sustain the verdict of the jury.

The evidence clearly shows that on Saturday afternoon preceding the accident there were two trucks at the packing

house when Burford arrived there in a truck known as the "Ripley" truck. One of the trucks was the "Betsy" truck which had a black body, and the other one was a truck with a blue body.

Numa Helsaback, a member of the State police force, testified that he was notified of the accident between seven and seven-thirty o'clock p. m.; that he went immediately to the scene of the accident and arrived there before all of the injured persons had been removed; that one of the bodies was on the highway when he arrived; that he examined the truck involved in the accident; that it was a ton and one-half Ford truck, slat body; the back part of it was a natural wood color; the body of the truck was black.

John Maybush testified that he was acquainted with Burford; that he saw Burford on the evening of the accident "about dusk;" that he was driving a truck "with rear end clean boards and black body;" that it was one of defendant's trucks.

J. W. Clemmer testified that he saw the Burford truck, the "Betsy" truck at the scene of the accident the morning following the accident; that it was "a black truck, the bed of wooden boards."

Lawrence Cain testified that he saw the truck known as the "Betsy" at the scene of the accident.

The jury being the sole arbiters of the credibility of the witnesses, and there appearing nothing inherently incredible in their testimony, it was error for the trial court to substitute its view of the case for that of the jury.

In Burks' Pleading and Practice (3rd Ed.), page 543, the prevailing rule in this Commonwealth is thus stated:

"It is not sufficient that the judge, if on the jury, would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it. If there is conflict of the testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court,

or by this court, or if improperly set aside by the trial court, it will be reinstated by this court."

In our opinion the verdict of the jury is based upon credible evidence; therefore, the judgment of the trial court must be reversed and this court will proceed to enter a judgment in favor of the plaintiff in accordance with the verdict of the jury.

*Reversed and final judgment.*