# Staunton

## Edgar E. DeMuth v. Anita Armstrong Curtiss.

September 8, 1948.

Record No. 3349.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*Charles Pickett* and *James Keith*, for the plaintiff in error.

*Andrew W. Clarke, Glenn U. Richard, Franklin P. Backus* and *Douglas C. Anderson*, for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The plaintiff, Anita Curtiss, obtained a judgment for $2700 in the Circuit Court of Fairfax County for damages due to personal injuries she sustained when struck by an automobile driven by Edgar DeMuth, the defendant, and hereinafter so-called. The accident occurred on U. S. Highway No. 1, a few miles south of the city of Washington, near the Penn Daw Hotel. This is a four-lane hard-surfaced road running north and south. The plaintiff, a pedestrian, was attempting to cross from the west side to a bus stop on the east side. Defendant was driving in the outside northbound lane towards Washington. The trial did not take place until about six years after the accident.

The defendant contends that the judgment is erroneous because the trial court improperly granted for the plaintiff instructions based upon the doctrine of the last clear chance which were not justified by the evidence, and also contends there is not enough evidence to support the verdict and same should have been set aside and final judgment entered for the defendant. The two assignments will be considered together, since both raise the question of the sufficiency of the evidence.

Plaintiff lived a short distance back from the west side of the highway. About dusk, on September 25, 1941, she left her home to catch the northbound bus for Washington. She gives this account of her movements:

"I got down to the highway, and that is such an awful busy highway I couldn't hardly get across. I stood and waited and after a while there wasn't a thing right or left, so I walked on across until I got to the middle of the highway. A light flashed on coming from over that hill and I speeded up and got just about across, like when I got one foot on the gravel, and I stopped and just about that time the car struck me. I didn't know any more. * * * I speeded up and ran across."

\* \* \* \* \* \*

"Q. You say that you looked towards Washington before you entered the highway? A. Yes, sir.

"Q. And saw nothing? A. Yes, sir.

"Q. You didn't see a thing? A. No, indeed.

"Q. Did you walk to the center? A. Yes, sir.

"Q. Did you walk in a straight way or diagonally? A. Right straight across.

"Q. You stopped in the center of the highway? A. No.

"Q. When did you look to the South? A. When that light came over the hill on me.

"Q. Where were you then? A. In the center.

"Q. In the center. How far away was this other car? A. I reckon it was about 1,000 feet on top of that hill.

"Q. The car was 1,000 feet away and you were in the center of the road? A. Yes, sir.

"Q. The car covered 1,000 feet while you were crossing the highway? A. Half of it.

"Q. Half of the highway. Did you ever see the automobile that struck you? A. No.

"Q. When you first started, you looked to the south and you saw nothing. You looked to the north and saw nothing. A. Indeed I did, or I wouldn't have crossed.

"Q. When you started across, the car that struck you was on the other side of the hill? A. Yes, sir.

"Q. More than a thousand feet away? A. Just about, I reckon."

Robert Godsey, a State motor vehicle officer, testified that his written report of the accident, based in part on statements made to him by the defendant at the time, contained the following:

"The speed, the estimated speed of Mr. DeMuth before the accident was approximately 40 miles per hour, and the moment of impact was between 5 and 10 miles per hour.

"The width of the highway at that particular point is 42 feet 6 inches. The width of the shoulder of the road from the hard surface to the ditch is approximately seven feet."

He also measured by his speedometer the distance from the brow of the hill, where plaintiff said she first saw defendant's car, to the place of the accident, and found it to

be between 900 and 1000 feet. His memorandum showed that the defendant was driving in his extreme right-hand lane.

It is clear that the accident could not possibly have happened under the circumstances testified to by the plaintiff. She states that when she reached the center of the highway at the double dividing line the headlights of the defendant's car came over the brow of the hill to her right, which was concededly a distance of approximately 1000 feet. She says that then she began to run across the two northbound lanes and had almost reached the far edge of the extreme right-hand lane when she was struck. If we assume that she was not running more speedily than an ordinary fast walk, which is about four miles an hour, it would have been necessary for the defendant's car to have been running in excess of two hundred miles per hour to have covered the 1000 feet while she was running 20 feet. She further says that she did not see the car which struck her, but only saw its lights as it came over the brow of the hill.

This testimony as to the movements of defendant's car is incredible and must be rejected. We must, therefore, look to the testimony of other witnesses to determine whether there is sufficient evidence to support a recovery on the theory of the last clear chance, since plaintiff's own testimony shows clearly that she was herself guilty of negligence, and that this was at least a concurring proximate cause of the injury unless the defendant, after he discovered, or ought to have discovered, her peril, was able by the exercise of ordinary care to have avoided injuring her.

The testimony of the defendant is to the effect that he was traveling in the outside northbound lane at a speed of approximately 40 miles per hour; that he was keeping a careful lookout ahead of him, and the first he saw of the plaintiff was when the beam of his left headlight flashed upon her; that at that time she was running and was two or three feet inside of the lane in which he was driving and which she was attempting to cross; that his best estimate is

that she was about four feet in front of his car and was running diagonally across his path in a northeasterly direction; that he instantly applied his brakes and cut his car to the left to avoid striking her; that the brakes were applied with such pressure that the car skidded; that skid marks on the road were six to eight feet long; that when plaintiff was struck by the right-hand side of his bumper and thrown against his right headlight the speed of his car had been reduced to between five and eight miles per hour; and that if he had not cut to the left he would have run over her instead of knocking her into the ditch along the right side of the road.

This testimony of the defendant is corroborated by the testimony of Mrs. Rowe, who was occupying the front seat along with the defendant. She says that when she first saw her the plaintiff was on the highway right in front of the car, and that the defendant applied his brakes with such suddenness and violence that it almost threw her through the windshield.

Another occupant of the car on the back seat, Captain Cary Stern, stated that the first thing he noticed was the sudden application of the brakes which threw him forward against the back of the front seat, at which time he saw the plaintiff immediately in front of the car a little to the left.

The testimony is that the car traveled about six to eight feet after the impact. It was not disputed that the plaintiff was dressed in dark clothes, and that, while it was not completely dark, the light was such that it was more difficult to see a person so dressed.

The witness, Willard Brown, testified that he was driving his car immediately behind the defendant at a distance of about 100 to 150 feet; that he saw the plaintiff before she was struck; that she was running straight across the road; that he did not actually see her step right in front of the car but lost sight of her for an instant; that the defendant made a quick stop and the witness Brown immediately applied his brakes so as to prevent a collision with

the defendant's car; that it all happened so quickly that he saw only a glimpse of the plaintiff which was after she had crossed the double line which was in the center of the highway; that he had no difficulty in seeing the plaintiff, although it was dusk and a mean time of the evening to drive; that he could not say how far she was from him when he saw her, but it was approximately the same distance that he was behind the defendant's car, 100 to 150 feet.·

Another witness called by the defendant, Herbert A. Thom, was driving in the opposite direction in the outside southbound lane. He testified that there was a line of traffic which was pretty congested on the northbound side of the road; that he had his headlights burning and first saw the plaintiff about 200 feet ahead of him as she was running in an easterly direction across his line of travel headed for the northbound lane; that this scared him so that he applied his brakes immediately and slowed down; that he did not watch the plaintiff as he went past her because he had to watch out for other cars, but that his wife did watch her.

Mrs. Thom's testimony was substantially the same as her husband's except that, after passing, she kept her eyes on the plaintiff while she was crossing the road; witness felt sure plaintiff was going to get killed and it worried and upset her; that she barely saw the car hit her and then stopped looking; that she thought the traffic which was coming in the opposite direction was such that she could not possibly get across the road; that she saw cars coming north, but they were all in only one lane of traffic coming at certain spaces apart; that the plaintiff "absolutely was running," and witness did not think that a driver of a car in the northbound lane could have seen her under the circumstances, though neither she nor her husband had any trouble seeing the plaintiff when she ran across the road about 200 feet directly in front of their car.

The plaintiff argues that there is evidence from which the jury was justified in finding that, after the plaintiff was in a position of peril, if the defendant had kept a proper

lookout he would have discovered her in that condition in time to have avoided the accident. But there is no reliable evidence as to when the plaintiff was first in a position of peril. Her own testimony, as well as that of all the witnesses who saw her, is that she continued running from the time she reached the double center lines until she was struck. There is nothing to justify a conclusion that she was in peril until she actually ran in front of the defendant's car. If defendant had seen her running before that time, he would have been justified in assuming that she would see his car coming and stop before entering the lane in which he was traveling. He testified that he did see her after she had gotten two or three feet inside his lane, which was just as soon as she came within the range of his lights, and that he immediately "applied the brakes so hard that they practically locked" and "pulled the car as far to the left as possible."

It is true that the memory of the witnesses was somewhat vague, but this was to be expected as the time of the trial was about six years after the accident. It appears probable that the defendant underestimated the distance in front of him where the plaintiff first came into view. He said this was about four feet. The speed of the car was greatly reduced before striking her, however, and four feet would seem a short space within which to have accomplished this. The actual distance she was in front of him when he first saw her seems to be immaterial, in view of the uncontradicted testimony of the defendant that he instantly applied the brakes of his car when he first saw her. This statement is borne out by the fact that, if his speed had not been reduced, the plaintiff would probably have been much more seriously injured, if not killed.

The burden rests upon the plaintiff to prove that she occupied a position of danger at such a time that the defendant, in the exercise of reasonable care, should have discovered her in time to have avoided the accident.

Plaintiff relies upon and quotes in her brief the doctrine of the last clear chance as thus stated by Mr. Justice Holt in

*State of Maryland* v. *Coard*, 175 Va. 571, 581, 583, 9 S. E. (2d) 454:

"Whenever one sees another in a place of peril from which it appears that he cannot extricate himself or where it appears that he is unconscious of his danger, or whenever by the exercise of ordinary care the defendant should have been cognizant of the situation and has a clear chance to avoid an accident with safety to himself, he must take that chance. In short, he is charged with what he saw and with what he should have seen. The antecedent negligence of a plaintiff does not of itself preclude his recovery. Starkly stated the reason for the rule is this: One cannot kill another merely because he is negligent.

"This is the common law rule as it has developed, and in the course of its development it has been made plain that one might be liable because of what he should have seen as well as for that which he actually saw. * * *

\* \* \* \* \* \*

"If the driver was not looking, the defendant is liable, for she could have avoided the accident as did the two cars ahead, and a jury has the right to assume that she was not looking, for she gave no evidence that she saw the Joynes car until immediately upon it. * * * ."

The rule as thus expressed was applied to a case where the driver of a car failed to see and ran into another motor vehicle, which had stopped and was standing in the street five or six feet from the curb while its occupant was clearing the windshield during a snowstorm. Under these circumstances, it was concluded that the driver apparently had ample opportunity to see the car standing directly in front of him, and, therefore, it was a jury question whether his failure to see it in this position of peril was due to his negligence.

But the case at bar is entirely different. The plaintiff was not standing in the lane of defendant's travel. All the evidence is that she ran in front of defendant's car. There is also abundant evidence to the effect that a continuous line of cars was moving in the lane traveled by the defendant. He

testified that he was only about thirty feet behind another car which was in front of him, and that plaintiff suddenly ran in between him and the other car. The defendant was not called upon under these circumstances to guard against the possibility that a person might unexpectedly dart in front of him from the road on his left. His primary duty was to keep a lookout ahead. There is no evidence whatever that the plaintiff was in a perilous position at a time when the defendant, by the exercise of ordinary care, could have discovered her danger in time to avoid striking her. A verdict rendered upon any such hypothesis would be based entirely on speculation. The plaintiff has wholly failed to carry the burden of proof incumbent on her.

It follows that the judgment complained of must be reversed and final judgment entered here for the defendant.

*Reversed.*