# Richmond

ETTA MAE LAUBACH, ADMINISTRATIX OF THE ESTATE OF MERRITT S. LAUBACH, DECEASED V. JOHN EDWARD HOWELL

March 9, 1953.

Record No. 4029.

Present, Hudgins, C. J., and Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Louis B. Fine, Howard I. Legum,* for plaintiff in error.

*Pilcher and Pilcher,* for defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Etta Mae Laubach, administratrix of the estate of Merritt S. Laubach, deceased, instituted this action against John Edward Howell to recover damages for the wrongful death of her decedent. The jury returned a verdict for defendant on which the trial court entered judgment.

Decedent died as a result of injuries sustained when the bicycle on which he was riding collided with an automobile driven by defendant on Bainbridge Boulevard in South Norfolk, Virginia  The boulevard extends north and south.  At the point of collision the paved surface is divided into three traffic lanes, each approximately twelve feet wide, and indicated by broken white lines.  The gravel shoulder on each side is approximately seven feet wide.

The accident occurred on April 13, 1951, at approximately 6:40 a.m.  The weather was clear, visibility good and the highway dry.  Only two persons saw the accident — John E. Howell, defendant, and Oscar Sloan who was riding a bicycle on the western shoulder some distance behind decedent.

Defendant having obtained a verdict in the lower court is entitled to have the facts stated in the light most favorable to him.  He testified that, as he was driving his 1947 Pontiac automobile southwardly in the proper traffic lane at a speed of approximately forty miles per hour, he saw two bicycle riders traveling in the same direction on the right-hand shoulder some distance ahead of him; that he veered to the left as he approached the first rider (Oscar Sloan), thereby placing the left wheels of his car on or near the broken white line dividing the southbound lane from the middle traffic lane, and so continued until he was within approximately fifteen feet of the second bicycle rider (deceased) who, without giving any signal, made a sharp left turn from the shoulder into the south traffic lane immediately in front of him; that he endeavored to avoid the collision by applying his brakes and turning his car to the left, but the

right front of the car struck decedent and the bicycle "in the right hand lane just to the right of the center of the lane;" that if decedent had not made the left turn, he (defendant) would have passed him several feet to his left in safety.

There were skid marks on the hard surface which began in the south-bound traffic lane approximately four feet from the edge of the hard surface and extended at an angle (not quite a forty-five degree angle) 126½ feet across the middle lane into the north-bound traffic lane.

The foregoing testimony fully supports the verdict of the jury; hence we must affirm the judgment unless the court committed reversible error in its rulings during the progress of the trial.

Plaintiff's contentions that there was such error are inconsistent. She first contends that the trial court committed reversible error in refusing to give an instruction on the doctrine of the last clear chance, and later contends that the court erred in refusing to instruct the jury that as a matter of law decedent was not guilty of contributory negligence.

The doctrine of the last clear chance is one of prior and subsequent negligence, or remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of plaintiff and the subsequent negligence of defendant. The doctrine is not applicable unless the plaintiff proves that after his perilous position became known to defendant, or ought to have been discovered by him in the exercise of ordinary care, defendant negligently failed to avoid the accident. Nor is it applicable to a case where the negligence of both plaintiff and defendant is simultaneous and concurrent.

Plaintiff argues that the testimony of Oscar Sloan was sufficient to support an instruction on last clear chance. This witness testified that he was riding a bicycle on the shoulder of the highway 150 yards behind decedent when defendant's car passed him traveling at a speed he estimated to be eighty miles per hour; that when defendant's car was approximately 100 yards from decedent and approaching him from behind, he (Sloan) saw decedent turn left and "start across the highway."

Sloan's estimate of speed and distance is entitled to little, if any, weight, when considered in connection with the physical facts and his other testimony. He was asked:

"Q. Where was Captain Dutch (decedent) when he was hit,

was he in Lane 1 (south traffic lane), 2 (middle lane), or 3 (north traffic lane)?

"A. Lane 1.

\* \* \* \* \* \*

"\* \* \* (He) just started across, and this man (defendant) come by me. I seen him about 20 feet of me. I heard him coming and I looked across my shoulder and by the time Captain Dutch started across he commenced to skid, throwed the brakes on, and it throwed him and the wheel across the road.

\* \* \* \* \* \*

"Q. The wheel was in lane 1 when he hit him?

"A. Yes, sir, and he throwed it into the third.

\* \* \* \* \* \*

"Q. You said he was turning his bicycle in Lane 1 when he was hit?

"A. That is right.

"Q. Why did he turn his bicycle in that direction?

"A. Some dog along there was bad, and that is why he went from his right to his left.

\* \* \* \* \* \*

"Q. Did he (defendant) turn out to avoid Captain Dutch?

\* \* \* \* \* \*

"A. He started turning out and throwed his brakes on and started cutting and slid right into Captain Dutch.

"Q. How close was he to Captain Dutch when Captain Dutch turned to the left?

"A. He had just got by my coat."

It is conceded that the point of impact was in the south traffic lane approximately four feet from the western edge of the hard surface. The photographs of the scene of the accident showing the skid marks, indicate that defendant's car began to skid approximately four feet from the western edge of the shoulder, that it was making a sharp left turn, and continued at the same angle (left) across the other part of the south traffic lane and all the way across the middle traffic lane. If Sloan's testimony, to the effect that defendant turned left, applied his brakes and began to skid immediately after decedent started across the highway is true, defendant could not have been 100 yards behind decedent when he (decedent) made the left turn. A car traveling eighty miles per hour could not have made the sharp turn indicated by the skid marks without turning over.

The only fair conclusion to be drawn from the testimony of Sloan is that decedent made the left turn when defendant was only a short distance behind him, and too late for defendant, in the exercise of ordinary care, to take effective action to avoid the accident. The testimony of this witness, considered as a whole, was insufficient to support an instruction on the doctrine of last clear chance.

■ The uncontradicted testimony is that decedent made a left turn into the south-bound traffic lane without giving any signal of his intention so to do, or taking any precaution for his own safety. Plaintiff argues that even though decedent was riding on the right shoulder, inasmuch as the shoulder is a part of the highway, he was under no legal duty to give a signal of his intention to turn therefrom onto the paved surface, and that it was the duty of defendant, in passing, to use the middle lane and yield the entire width of the south-bound lane to him. This argument is unsound. It is not supported by reason or authority. Decedent had the same right to ride his bicycle on the paved surface of the highway as defendant had to operate his car thereon. Whether he used the shoulder or the paved surface, defendant had a right to pass him provided he did so at least two feet to his left. Code of 1950, sec. 46-224. Failure of either to obey traffic regulations would constitute negligence, as the statute (Code, sec. 46-183) applies to the operator of a motor vehicle and the rider of a bicycle. The pertinent provisions of this section are: ''Every person riding a bicycle * * * upon a roadway * * * shall be subject to the provisions of this chapter (Chapter 4, Regulation of Traffic) applicable to the driver of a vehicle * * *.''

Therefore, when defendant saw decedent riding his bicycle on the shoulder of the road he had a right to assume that decedent would not turn off the shoulder into the south-bound traffic lane without complying with the provisions of Code, section 46-233, the pertinent provisions of which are: ''Every driver who intends to * * * turn or partly turn from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal * * * plainly visible to the driver of such other vehicle, of his intention to make such movement.''

Since the positive testimony is that decedent gave no signal of his intention to make a left turn, the court correctly refused

plaintiff's request to instruct the jury that decedent was not guilty of contributory negligence as a matter of law.

■ The only other contention of plaintiff which merits consideration is that the court erred in its failure to instruct the jury that the maximum speed limit on the highway at the scene of the accident was twenty-five miles per hour.

Plaintiff offered no evidence tending to show that the speed limit fixed by Sections 46-212, 46-185 and 46-186 of the Code applied to the boulevard at the point of collision. She did not introduce an ordinance of the city of South Norfolk which the city was authorized to adopt under the provisions of Section 46-198. She did introduce testimony tending to show that there were highway markers along the boulevard indicating the speed limit. One witness testified that such a marker was a mile from the scene of the accident. Others testified that there were markers along the boulevard both north and south of the scene of the accident, but did not state the maximum speed limit shown thereon. Defendant testified that after he passed a school house several blocks north of the scene, he increased his speed from twenty-five miles to approximately forty miles per hour. Under these circumstances, the court correctly submitted the question of the speed limit to the jury.

We find no reversible error in the rulings of the trial court. The judgment is, therefore, affirmed.

*Affirmed.*