# Richmond

## TED HOPSON v. LOUISE GOOLSBY.

March 7, 1955.

Record No. 4338.

Present, All the Justices.

The opinion states the case.

*Francis W. Flannagan* and *Curtin & Haynes,* for the plaintiff in error.

*Warren & Warren* and *D. B. Rouse,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought by Louise Goolsby, plaintiff, for damages for personal injuries received when she was struck by an automobile driven by the defendant, Hopson. She recovered a verdict for $7,500 on which the court entered the judgment to which we granted Hopson this writ of error.

The assignments of error raise questions as to whether the plaintiff was guilty of contributory negligence as a matter of law, and whether there was error in the rulings on instructions, particularly in submitting the doctrine of last clear chance to the jury.

The accident occurred about 7:15 p.m., September 23, 1953, on Moore street in Bristol, a short distance north of the intersection of that street with Oakview avenue and Randall street. Moore street at that point runs approximately north and south. Oakview crosses it from northeast to southwest and in such manner as that their northwest intersection is not at an angle but on a curve. Randall street enters Moore street from the southeast but does not cross it. The result is an intersection into which traffic moves from five directions. In the middle of the intersection is an overhead traffic light controlling traffic into the intersection, but with a green arrow which permits traffic moving south on Moore to turn right on Oakview without stopping for the red light. Moore street north of the intersection is U. S. Highway No. 11, carrying traffic out of Bristol north or east toward Abingdon and is heavily traveled. From the intersection going south Moore street is level for 50 feet and then rises on a 10% grade.

Going north it is practically level for 115 feet, the next 60 feet is 4.6% upgrade, increasing then to 6.8%.

As Moore street extends north from the intersection its hard surface is 49 feet wide, divided by double white lines into two lanes of unequal width, the west lane where plaintiff undertook to cross being approximately 27 feet wide and the east lane 22 feet. There are no sidewalks on Moore street north of the intersection and no designated crosswalks at the intersection except on the south side.

At the time of the accident the road was dry, it was practically dark and cars, including defendant's, were moving with their lights on. The extent to which the area of the accident was lighted at the time is not clear from the evidence.

The plaintiff, Mrs. Goolsby, who was 79 years old, lived on the north side of Oakview west of the intersection and had started to walk to Johnson Court, an apartment building at the northeast corner of Oakview and Moore. When she reached the intersection she turned left and continued along the shoulder on the west side of Moore street until she reached a point approximately 210 feet north of the traffic signal. There she started across and had crossed the white lines into the east lane of Moore street when she was struck by the defendant's car and seriously injured.

There is some conflict, even in the plaintiff's evidence, as to how far she had gone into the east lane before she was struck. The plaintiff was uncertain and her only eye-witness indicated that she was just past the white lines. There was evidence for the plaintiff that after the accident she was lying near the middle of the east lane, 22 feet from the front of defendant's car. The testimony was that the defendant's car had not been moved before a police officer arrived and it was then approximately in the center of its right-hand lane, the east lane, headed north. From the rear wheels of the car there were skid-marks for 60 feet which bore to the right going north. The officer testified that he could not tell from these marks when the car actually slid or when the brakes

were applied. The plaintiff was struck by the left front of defendant's car.

It is conceded that the defendant was negligent. This was a 25-mile zone and he admitted to running 30 to 35 miles. Plaintiff's eye-witness said his speed was over 50 miles and from that testimony, coupled with the 60 feet of skidmarks upgrade, as stated, the jury could have found that he was going in excess of 35 miles an hour.

The defendant was driving north on Moore street with his wife and daughter on the front seat with him. Their version of the matter was that as he came down Moore street hill from the south the signal light in the intersection was red and three cars were standing on the other side facing him, the first one signaling for a left turn. He slowed down but as he came nearer the light changed to green, he proceeded through the intersection without stopping, and as he passed the stopped cars the plaintiff stepped out from behind the last one into the path of his car when he was too close to avoid striking her.

According to the plaintiff's evidence, which for the present purposes must be accepted, there were no cars at the intersection and the street was clear. The plaintiff testified that on this occasion she went up Moore street to cross where she generally crossed; that she looked up and down the street twice and nothing was passing, which made her wonder because traffic was usually heavy there. Seeing no cars and hearing none she thought that was the best time for her to cross, and she went as fast as she could. She did not know she was in danger until she heard the "skreeking" and then she did not know which way to go to get out of the way. When she came to she was near the edge of the road but did not know whether she had been thrown there or moved there. She got up but her leg was broken and she lay down again. She testified that after starting across she did not again look to her right or to her left, but looked straight ahead and did not see the car that struck her and did not hear it until she heard the noise of the brakes.

Her eye-witness corroborated her testimony. He testified that he was standing at a window in the apartment house and saw the plaintiff walking up the west side of Moore street; that she stopped and looked in both directions, there were no cars coming and she started across; she had gotten "just half-way over into the middle lane" (apparently meaning the west lane as there was no middle lane) when defendant's car came over Moore street hill. He saw the headlights of the car and was attracted by its speed; he realized what was going to happen, and "as she got past that middle lane [line] this car hit her," and knocked her in the air, and when he reached the scene she was lying not over a couple of feet from where she was hit. He marked on the plaintiff's map where she was struck and where she was lying, both marks being just over the white lines into the east lane, but about 30 feet apart. He said that after she started across she did not hesitate or stop, but looked straight ahead until she was struck.

There was evidence that from the place where plaintiff undertook to cross there was a clear view of Moore street for 600 feet to her right, or south, the direction from which the defendant came.

The defendant argues that on her own evidence the plaintiff was guilty of contributory negligence as a matter of law, first, because she did not cross at the intersection of Moore and Oakview, and, second, because the plaintiff did not look to her right or left after she stepped into the street.

The defendant offered, and the court refused, an instruction which would have told the jury that in cities and towns a pedestrian must cross the street, whenever possible, only at intersections, and if the plaintiff did not do so she was guilty of negligence and if such negligence proximately contributed to the accident she could not recover. Section 46-243 of the Code provides that in cities and towns pedestrians shall cross only at intersections, whenever possible, and only at right angles. Maps drawn to scale were put in evidence. They show that Oakview avenue enters Moore street from the west on a curve, as stated, and there was no angle or

corner, and no crosswalk and no sidewalk to indicate where plaintiff should cross. If she had crossed at right angles at any point within 75 feet north of the traffic signal she would have walked into the mouth of Oakview avenue on the other side. We do not think she was disobedient to the command of the statute to the point of being negligent when she went beyond the five-point intersection to where she would have only one street to cross instead of the area upon which traffic converged from five directions.

■ The failure of the plaintiff to look after she started across the street presents a more serious question. In *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345, in which the decedent had crossed the north half of a 47-foot street, stopped in the middle to let a car pass which was coming from his right, and was struck and killed by one coming from his left, it was said that when a pedestrian in a city or town steps from the sidewalk into the street at an intersection, he should first see whether any vehicular traffic is approaching from the left. "If the way be clear, he has the right to proceed to the comparative zone of safety, which is the center of the street. Upon his arrival at the center of the street, he is under the legal duty of looking to his right for approaching vehicles," and although the statute (now § 46-244) accords him the right of way, "he would be guilty of contributory negligence which would bar a recovery * * * if he attempted to assert his right of way in the face of approaching traffic dangerously near to him." 177 Va. at p. 458, 14 S. E. (2d) at p. 348.

In *Hooker* v. *Hancock,* 188 Va. 345, 49 S. E. (2d) 711, 716, we said that the above statement "attains added force when applied to one who crosses between intersections."

In *Stark* v. *Hubbard,* 187 Va. 820, 826, 48 S. E. (2d) 216, 219, the court repeated that it was the duty of that plaintiff "to look to her right when she reached the middle of the highway" in the city of Norfolk.

In *Moore* v. *Scott,* 160 Va. 610, 618, 169 S. E. 902, 905, we approved the statement previously made in *Virginia Elec. &*

*Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 434-5, 163 S. E. 329, 333, that when a pedestrian crosses a street between intersections ordinary care requires that he exercise a greater degree of vigilance than when crossing at an intersection. That rule was repeated in *Manhattan &c. Corp.* v. *Williams,* 191 Va. 489, 492, 62 S. E. (2d) 10, 12.

In *Overton* v. *Slaughter,* 190 Va. 172, 56 S. E. (2d) 358, it was said that the language quoted from the *Thornton* case, *supra,* was not intended to modify the rule that where a pedestrian is crossing at a regular street intersection where there is no traffic light or traffic officer, he has the right of way during the entire crossing. In view of the mounting volume of traffic we think the center of a city or town street is not to be considered as a "comparative zone of safety" as characterized in the *Thornton* case. It did not prove so for the pedestrian in that case who was killed at that point in the street. The pedestrian must use reasonable care to look when he steps into the street and as he continues across. Such reasonable care requires increased vigilance of a pedestrian who undertakes to cross between intersections where vehicles have the better right to be. *Hooker* v. *Hancock, supra, Moore* v. *Scott, supra.*

The duty of the present plaintiff to look did not cease but became more insistent when she came to the middle of the street and was stepping into the travel lane of cars coming from her right. She did not perform that duty. Admittedly she violated that duty, and necessarily she was guilty of contributory negligence. Had she performed that duty she would have seen the defendant's car approaching and dangerously near. Her eye-witness testified, as stated, that before she got to the middle of the street defendant's car came over Moore street hill at high speed and hit her just as she got past the middle line. He said that when he saw her and saw the car he realized there would be an accident. What he saw she could have seen, and what he thought inevitable would doubtless have impressed her the same way if she had looked.

A glance to her right would have warned her of the danger

of going ahead. There was nothing to keep her from looking, and there was every reason why she should look. A short distance to her right was the intersection where four streets converged, from which traffic might momentarily be expected. In addition there was the signal light at the intersection which would have told her whether the street she was crossing was open to traffic from the other side.

Her duty to look was not removed by the fact that the defendant was approaching at excessive speed. That fixed negligence upon him but did not relieve her of her duty to look, the performance of which would have disclosed the danger of continuing her journey across the street. The duty of looking is based on the wisdom of seeing whether traffic is approaching, where and at what speed. If looking discloses approaching traffic, then the right to proceed is to be tested by whether a person of ordinary prudence would attempt it. *Rhoades* v. *Meadows*, 189 Va. 558, 562, 54 S. E. (2d) 123, 125. But if a person having a duty to look "carelessly undertakes to cross without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law." *Hooker* v. *Hancock, supra*, 188 Va. at p. 356, 49 S. E. (2d) at p. 716; *Bryan* v. *Fewell*, 191 Va. 647, 653, 62 S. E. (2d) 39, 42; *Manhattan &c. Corp.* v. *Williams, supra*, 191 Va. at pp. 492-3, 62 S. E. (2d) at p. 12.

At the instance of the plaintiff the court gave a last clear chance instruction, telling the jury that even though plaintiff was negligent in failing to look and "her negligence directly contributed to the accident," yet if the defendant saw or should have seen that she was in a position of peril, of which she was unconscious or from which she was unable to extricate herself, and defendant then had time to avoid striking her by exercising ordinary care, the plaintiff was entitled to recover notwithstanding her own negligence.

We have said in a number of recent cases that the doctrine of last clear chance does not supersede the defense of contributory negligence, and a plaintiff who is guilty of *con-*

*tributory* negligence cannot recover in any event. *Conrad* v. *Thompson,* 195 Va. 714, 80 S. E. (2d) 561, and cases there cited. It was therefore error to tell the jury otherwise, as this instruction did.

Furthermore, the doctrine of last clear chance was not applicable under the evidence in this case and the questions were simply as to the negligence of the defendant and the contributory negligence of the plaintiff. The plaintiff was never in a position of peril, a requisite of the doctrine, until she stepped across the middle line and into the defendant's lane of travel. Until she did that the defendant, even if he saw her, could presume that she would use her faculties and not walk heedlessly into the path of his car. *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742; *Paytes* v. *Davis,* 156 Va. 229, 157 S. E. 557; *DeMuth* v. *Curtiss,* 188 Va. 249, 49 S. E. (2d) 250.

Moreover, where the opportunity to avoid an accident is as available to a plaintiff as to a defendant, which was the case made by the evidence here, then the plaintiff's negligence is not a remote cause of the accident but continues as a proximate cause and bars recovery. *Lanier* v. *Johnson,* 190 Va. 1, 5, 55 S. E. (2d) 442, 444.

Before the doctrine of last clear chance is applicable, the burden is on the plaintiff to show by a preponderance of the evidence that the defendant was negligent in what he did or failed to do after he discovered or should have discovered that the plaintiff was in a situation of helpless or unconscious peril. Whenever the negligence of the defendant is not the sole proximate cause of the accident, but the negligence of the plaintiff is also a proximate cause, as distinguished from a remote cause, the doctrine does not apply and the plaintiff cannot recover on that principle. *Stuart* v. *Coates,* 186 Va. 227, 238, 42 S. E. (2d) 311, 316-7; *Burton* v. *Oldfield,* 194 Va. 43, 47, 72 S. E. (2d) 357, 360; *Whichard* v. *Nee,* 194 Va. 83, 87-9, 72 S. E. (2d) 365, 368-9; *Bonich* v. *Waite,* 194 Va. 374, 379-80, 73 S. E. (2d) 389, 393-4; *Manhattan &c. Corp.* v. *O'Connell,* 194 Va. 398, 402-3, 73 S. E. (2d) 410, 413; *Laubach* v. *Howell,* 194 Va. 670, 672, 74 S. E. (2d) 794,

795-6; *Craighead* v. *Sellers*, 194 Va. 920, 923, 76 S. E. (2d) 212, 214.

Here the negligence of the plaintiff was necessarily a contributing cause of her injuries and hence bars her recovery. The judgment must therefore be reversed and final judgment entered here.

*Reversed and final judgment.*

HUDGINS, C.J., SPRATLEY and WHITTLE, JJ., dissenting.

WHITTLE, J., dissenting.

I agree with the majority opinion wherein it holds that the instruction attempting to employ the last clear chance doctrine was erroneous, and further that the facts do not present a last clear chance question. In my view therefore the case should be reversed and remanded for a new trial.

I cannot agree that the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff was an elderly woman, in good physical condition. She testified that she had lived on the highway near the point of accident since the road was built and was fully aware of the prevailing traffic conditions. She had walked on the curb beyond the wide mouth of the intersection to a point where the street was only 49 feet in width and where the crossing could ordinarily be safely negotiated.

The majority opinion concedes: "We do not think she was disobedient to the command of the statute (§ 46-243) to the point of being negligent when she went beyond the five-point intersection to where she would have only one street to cross instead of the area upon which traffic converged from five directions."

Admittedly, plaintiff went to a logical point to attempt the crossing. After looking twice in both directions and seeing no approaching traffic she started across the road at right angles "as fast as she could go". Her vision to the south, the direction from whence the defendant's car approached, was

clear for a distance of 600 feet, and when plaintiff started to cross the car had not come into view. Under these circumstances she had a right reasonably to believe that she could make the crossing in safety. She knew that she was in a 25-mile zone and had the right to assume that motorists would obey this positive law. *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592; *Harris Motor Lines* v. *Green,* 184 Va. 984, 37 S. E. (2d) 4; *Millard* v. *Cohen,* 187 Va. 44, 46 S. E. (2d) 2; *Hardiman, et al.* v. *Dyson,* 194 Va. 116, 72 S. E. (2d) 361.

It is clear that had the defendant been driving within the speed limit of 25 miles per hour, instead of 50 miles per hour as disclosed by the evidence, the plaintiff could have safely crossed with time to spare.

As the learned author of the majority opinion said in *Rhoades* v. *Meadows,* 189 Va. 558, 563, 54 S. E. (2d) 123, 125:

"The mathematics of the problem show that if the defendant had been approaching lawfully, plaintiff would not have been mistaken in thinking it was safe to cross. If she had proceeded at an average walk, and he had been running 50 miles an hour, he would still have been some distance from her when she completed the crossing. It was, we think, a question of fact and not of law whether she failed to exercise reasonable care."

The same logical reasoning applies with greater force to the case at bar.

The cases cited in the majority opinion holding that it was negligence as a matter of law for the plaintiff involved to fail to look to the right for approaching traffic before attempting to cross the last half of the streets there involved, are readily distinguishable from the instant case. In those cases the pedestrians were attempting to cross the street at a time when traffic was heavy and cars, in plain view, were passing in both directions.

When Mrs. Goolsby undertook to make the crossing no cars were in sight and "traffic was remarkably light". Ad-

mittedly, the defendant's car was not in sight and was more than 600 feet away. Under such circumstances we should not hold that she was guilty of contributory negligence as a matter of law because she failed to look again before undertaking to cross the remaining half of the street. In my view, the question presented a factual issue for the jury.

Under the circumstances existing, ordinary care did not impose upon Mrs. Goolsby the duty to be continuously looking to ascertain if cars were approaching under penalty that in failing to do so, if injured, her negligence must be conclusively presumed. *Ebel* v. *Traylor,* 158 Va. 557, 562, 164 S. E. 721; *Smith* v. *Va. Ry. & P. Co.,* 144 Va. 169, 131 S. E. 440.

"The law does not require a person to know that he is absolutely safe before taking a given course of action * * *; he is only required to exercise ordinary care to avoid accident—such care as a reasonably prudent person would exercise under like circumstances." *Norfolk & P. Co.* v. *Forrest,* 109 Va. 658, 668, 64 S. E. 1034, 1038; *Newport News &c. Co.* v. *Bradford,* 99 Va. 117, 37 S. E. 807.

I cannot escape the conclusion that the question of whether or not plaintiff was contributorily negligent on this occasion presented a factual issue and that the majority opinion holding to the contrary is invading the province of the jury. We should measure contributory negligence by the familiar rule, long adhered to by us, that the question is for the jury unless the evidence is such that there should be no difference in the judgment of reasonable men as to the proper inferences to be drawn therefrom. *Hoover* v. *Neff & Son,* 183 Va. 56, 62, 63, 31 S. E. (2d) 265, 268; *Edgerton* v. *Norfolk Southern Bus Corp.,* 187 Va. 642, 651, 47 S. E. (2d) 409, 415; *Hooker* v. *Hancock,* 188 Va. 345, 355, 49 S. E. (2d) 711, 715; *Rhoades* v. *Meadows, supra,* 189 Va., at page 561, 54 S. E. (2d), at page 124.

HUDGINS, C.J., and SPRATLEY, J., join in this dissent.