32 F.3d 562
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William COPENHAVER, Plaintiff-Appellant,
v.
RENT-A-CRANE, INCORPORATED, Defendant-Appellee.
 No. 92-2439.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 28, 1994.
Decided July 28, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CA-90-13)
 Frederic W. Schwartz, Jr., Washington, DC, for Appellant.
 Steven W. Bancroft, Melissa S. Hogue, Lewis, Trichilo, Bancroft, McGavin & Horvath, P.C., Fairfax, VA, for appellee.
 E.D.Va.
 VACATED AND REMANDED.
 Before HALL, MURNAGHAN, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 William Copenhaver appeals the district court's refusal to grant Copenhaver's proposed jury instructions as to (1) the last clear chance doctrine; (2) Copenhaver's right-of-way; and (3) a proposition on reasonable care taken from Danner v. Cunningham, 72 S.E.2d 354 (Va.1952), in this personal injury action in which the jury found in favor of Rent-A-Crane, Inc. We vacate and remand for a new trial.
 
 I.
 
 2
 On March 27, 1989, William Copenhaver was struck by a crane owned and operated by Rent-A-Crane. Copenhaver had been riding, together with Charles Byram, a fellow employee, in a tractor-trailer operated by his employer, Timothy Hetrick. Hetrick, travelling north on Choptank Road, stopped the truck at an intersection. Hetrick dropped off Copenhaver, employed as an equipment operator and truck driver, in a residential area under heavy construction, so Copenhaver could finish digging a foundation. Copenhaver took several seconds to collect his belongings from the truck, stepped down from the cab of the truck, and began to cross Choptank Road. As Copenhaver gathered his belongings, Hetrick saw a crane approximately three to four blocks behind him. Hetrick testified that he told Copenhaver to "hurry up, a crane is coming." Byram testified that he never heard Hetrick say those words. Hetrick kept his engine running, and his foot on the brakes as he waited to drop Copenhaver off; two amber lights and two red lights were lit indicating that the truck was momentarily stopped. The truck took up almost the entire north-bound lane of Choptank Road. After Copenhaver passed the front of the truck, the crane pulled out into the southbound lane to pass it. Hetrick testified that the crane was travelling in excess of the twenty-five mile-an-hour speed limit.
 
 
 3
 Copenhaver walked in front of the tractor-trailer, and at a slight angle away from the front of the truck. Hetrick testified that Copenhaver had just enough time to stop in the southbound lane, turn toward the approaching crane, and throw his hands up, before he was run over by the crane. Hetrick also testified that Copenhaver had been walking fast. Byram testified that Copenhaver was walking at a normal rate of speed. Kyle Spangler, the crane operator, testified that Copenhaver proceeded at more than a walking pace, but not a run. Hetrick testified that he did not actually see Copenhaver look to his left prior to crossing the southbound lane, but could not say that he did not look, because Hetrick was looking at the crane through his mirror at times. Byram testified he never saw Copenhaver look to his left to see what might be coming. Both Hetrick and Byram testified that the accident happened so quickly that they had no time to warn, holler, or motion to Copenhaver.
 
 
 4
 Spangler testified that he first saw Copenhaver looking in the direction of the truck cab, and that it appeared as though he was talking with the truck driver. He then testified that he decided to pass the truck, and moved into the southbound lane. There was only two to two-and-a-half feet between the crane and the truck when Spangler moved to pass. Spangler testified that he was travelling fifteen miles per hour. Spangler did not sound his horn, and does not recall activating his directional signal when he passed the truck. Spangler kept Copenhaver in view for about two-thirds of the distance of passing, and it was when he had gotten "pretty close to ... [the truck's] front bumper, pretty close, right next to it" when he "seen this man dart out in front of [him]." Spangler testified that within "a few seconds" after he saw Copenhaver move out in front of him, he fully applied his brakes as hard as he could, and "never got off the brakes." He did not turn his wheel to change direction when he saw Copenhaver. The crane drifted to the left from the application of the brakes on the unfinished road.
 
 
 5
 Spangler further testified that he thought Copenhaver was going to clear the road, and that when Copenhaver turned toward the crane, Spangler thought he was going to try and go back the way he had come. According to Spangler, when Copenhaver threw his hands up, and looked like he was turning back, the crane was three to three-and-a-half feet from him. The second wheel on the left side of the crane stopped on Copenhaver's leg; on impact, Copenhaver was thrown forward and to the left of Choptank Road. Spangler testified that the only thing he could do was apply his brakes, and that he could not have steered clear of Copenhaver. Finally, Spangler testified that based on his observation of Copenhaver, had Copenhaver continued on, he would have cleared the crane.
 
 
 6
 All eye-witnesses agreed that Copenhaver had almost made it across Choptank Road when he was hit. Copenhaver testified that Copenhaver had no recollection of the accident.
 
 
 7
 Both parties presented accident reconstruction expert witness testimony. Copenhaver's expert, Harry Kriemelmeyer, calculated that Copenhaver was visible to Spangler for approximately 1.6 seconds prior to impact. Kriemelmeyer testified that the crane was travelling approximately thirty miles per hour. He opined that Spangler should have had sufficient time to stop before hitting Copenhaver.
 
 
 8
 Stephen Chewning, Rent-A-Crane's expert, made the same assumption as Kriemelmeyer, that it took approximately one second for Spangler to react after seeing Copenhaver move into his path. Chewning opined that his calculations corresponded to Spangler's version of the accident, and that regardless of whether Spangler observed Copenhaver at 1.6 seconds before impact, as Kriemelmeyer opined, or 1.2 seconds before impact as Chewning opined, the accident could not have been prevented. Chewning's opinion was based on the crane travelling at fifteen miles per hour.
 
 
 9
 The jury returned a defense verdict. Copenhaver's motion for a new trial was denied by the district court. This timely appeal followed.[1]
 
 II.
 
 10
 A trial court should set aside a verdict and grant a new trial if the verdict is " 'against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice.' " Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 594 (4th Cir.1985), amended, 788 F.2d 1042 (4th Cir.1986) (quoting Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891-92 (4th Cir.1980)). We will reverse the district court's decision regarding a motion for a new trial only upon a showing of abuse of discretion. Id. One ground for granting a new trial is where the "jury was improperly instructed on the question of liability and reached their decision under an incomplete theory of law." Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 892 (4th Cir.1980).
 
 
 11
 Challenges to jury instructions also are reviewed under the abuse of discretion standard. Nelson v. Green Ford, Inc., 788 F.2d 205, 208-09 (4th Cir.1986); United States v. Benny, 786 F.2d 1410, 1416 (9th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 
 12
 Copenhaver's first claim of error is that the district court erred in refusing to give a jury instruction on the last clear chance doctrine. The district judge refused the instruction on the basis that it was not applicable to the facts of the case.
 
 
 13
 In Virginia, where an injured person negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw or should have seen him in time to avert the accident by using reasonable care. Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized or ought to have realized his peril in time to avert the accident by using reasonable care. Pack v. Doe, 374 S.E.2d 22, 25 (Va.1988) (citations omitted). The last clear chance doctrine does not supersede the defense of contributory negligence. Hopson v. Goolsby, 86 S.E.2d 149, 153-54 (Va.1955); Sanford v. Mosier, 111 S.E.2d 283, 285 (Va.1959). The last clear chance doctrine allows a negligent plaintiff to recover only if his negligence was in fact not a proximate cause, but only a remote cause or condition of the accident, and the negligence of the defendant was the sole proximate cause. Hopson, 86 S.E.2d at 154. Where the opportunity to avoid an accident is as available to the plaintiff as to the defendant, then the plaintiff's negligence is not a remote cause of the accident but continues as a proximate cause. Greear v. Noland Co., 89 S.E.2d 49, 53 (Va.1955).
 
 
 14
 We find that the last clear chance doctrine is applicable under these facts. Just as this Court determined on the prior appeal of this case that whether Copenhaver was contributorily negligent is a question of fact that a jury should resolve, we find that it would also be up to the jury to decide whether Copenhaver's negligence was a proximate cause of the accident, or if Spangler could have best avoided the accident. Accordingly, we find that the district court's refusal to give a last clear chance instruction to the jury in this case was an abuse of discretion.
 
 
 15
 Here, evidence was presented that Copenhaver was negligent in crossing Choptank Road without looking to his left for oncoming vehicles. Hetrick testified that he warned Copenhaver of the oncoming crane. However, the evidence supports the conclusion that Copenhaver never heard the warning. First, Byram testified that although he was sitting in the truck when Hetrick voiced this warning to Copenhaver (who was in the process of gathering his belongings to exit the truck), Byram did not hear it. Moreover, it is highly unlikely that Copenhaver heard the warning, and yet proceeded across the path of the oncoming crane without looking. Moreover, Copenhaver's action in walking across the path of the oncoming crane at somewhere between a normal and fast-paced walk, rather than a run, is inconsistent with the notion that he was conscious of his peril. This evidence was sufficient to support a conclusion by the jury that Copenhaver, while probably negligent, was unconscious of his peril. See Pack v. Doe, 374 S.E.2d at 25.
 
 
 16
 In addition, there was sufficient evidence for a reasonable jury to determine that Rent-A-Crane had the last clear chance to avoid Copenhaver. First, the parties agree that Spangler actually saw Copenhaver prior to the accident. The pertinent issue then is whether Spangler, exercising reasonable care, could have avoided Copenhaver, once he did see him. See Hopson, 86 S.E.2d at 154. In this case, the parties' expert witnesses disagreed as to whether Spangler had sufficient time to stop before hitting Copenhaver, thus avoiding the accident. In addition, Spangler testified that it took him "a few seconds" to apply his brakes. Both experts testified that it should have taken Spangler one second to react to seeing Copenhaver. Spangler also testified that he decided to take no further evasive action, other than hitting his brakes.
 
 
 17
 Because evidence was presented at trial that Spangler could have avoided the accident, we find that the doctrine of last clear chance should have gone to the jury. See Nicholson v. Stroup, 249 F.2d 874, 876 (4th Cir.1957). The district court's refusal to give Copenhaver's proposed jury instruction on the last clear chance doctrine was reversible error.
 
 
 18
 Copenhaver's second alleged error is the district court's refusal to accept Virginia Model Jury Instruction No. 14.030.[2] The district court refused Model Jury Instruction No. 14.030 on the ground that it was inapplicable to the case because Copenhaver was not crossing at a marked crosswalk. We find that it is clear from both the Model Jury Instruction, and Va.Code Ann. Sec. 46.2-924 (Michie 1989), the statute from which the Instruction was taken, that the Instruction applies to situations other than where the pedestrian is in a clearly marked crosswalk. Moreover, the evidence in this case was that Copenhaver was crossing a street or highway, at an intersection, where the maximum speed limit was not more than thirty-five miles per hour.[3] Appellee contends that Model Jury Instruction No. 14.000 was properly used instead of 14.030. Instruction No. 14.000 relates to the duties of a pedestrian in crossing a highway; Instruction No. 14.030 relates to the right-of-way of a pedestrian. We find that the two are not mutually exclusive. In this case, Instruction No. 14.030 would have placed a burden and duty on Spangler to yield to Copenhaver's right-of-way. Instruction No. 14.030 relates directly to the issue of contributory negligence. Had the Instruction been given, the jury could have determined that Copenhaver had the right-of way, and that Spangler had the duty to avoid him.
 
 
 19
 Accordingly, we find that the district court likewise erred in refusing to grant Copenhaver's proposed Instruction No. 14.030 under the facts of this case. Evidence was introduced that Spangler saw Copenhaver preparing to cross, but assumed that he would go back the way he came. He failed to blow his horn, or steer away from Copenhaver. While the jury could have determined that Spangler could not have given Copenhaver the right-of-way, there was also evidence to support a finding by the jury that Spangler had the duty to yield to Copenhaver, and failed to comply with that duty. With Instruction No. 14.000, and without Instruction No. 14.030, the burden and duties were solely on Copenhaver. Had the jury been properly instructed, they may not have found contributory negligence.
 
 
 20
 Because contributory negligence is a jury question in this case, as this Court held in the prior appeal, the jury should likewise have been given Instruction No. 14.030.
 
 
 21
 Copenhaver's final claim is that the district court erred in refusing a jury instruction taken from the case of Danner v. Cunningham, 72 S.E.2d 354 (Va.1952), which sets forth a standard of reasonable care. However, the record does not reflect that Copenhaver objected to the district court's refusal of the instruction. Accordingly, the objection is waived on appeal, absent plain error. Fed.R.Civ.P. 51; Waters v. Massey-Ferguson, Inc., 775 F.2d 587, 590-91 n. 2 (4th Cir.1985). We find no plain error on this record as to the district court's refusal to grant this instruction.
 
 
 22
 Accordingly, we vacate based on the district court's refusal to grant the last clear chance jury instruction and Virginia Model Instruction No. 14.030, and remand for a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 VACATED AND REMANDED
 
 
 [1]
 In a prior appeal of the district court's directed verdict in favor of Rent-A-Crane, Inc., we reversed and remanded for a new trial. Copenhaver v. Rent-A-Crane, Inc., No. 90-3113 (4th Cir. Jan. 16, 1992) (unpublished)
 
 
 [2]
 This instruction provides as follows:
 Pedestrian's Right-of-Way at Crossing or Intersection Where Speed Limit Not More Than 35 M.P.H.
 A pedestrian has the right-of-way when crossing a highway [street] within any clearly marked crosswalk [at any regular pedestrian crossing at the end of a block; by the most direct route at any intersection where the maximum speed is not more than 35 miles per hour].
 The pedestrian's right-of-way begins on one side of the street and continues until he has completed his crossing in the crosswalk [regular pedestrian crossing; at the intersection].
 When a pedestrian has the right-of-way, the driver of a vehicle has a duty to change course, or slow down, or come to a complete stop, if necessary, to permit the pedestrian to cross safely and expeditiously.
 If a driver fails to perform this duty, then he is negligent.
 
 
 [3]
 The only portion of Instruction No. 14.030 that may, or may not, apply is whether Copenhaver was crossing at the most direct route. The record is not clear on this point. However, we note that the statute from which the Instruction is taken imposes no such requirement on the pedestrian. At any rate, whether Copenhaver crossed by the most direct route is a question of fact, properly determined by the jury