15719

# TRUETT v. ATLANTIC COAST LINE RAILROAD COMPANY

(33 S. E. (2d), 396)

*Mr. W. T. McGowan,* of Timmonsville, S. C., and *Mr. C. Y. McDonald,* of Florence, S. C., Counsel for Appellant,

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, S. C., Counsel for Respondent,

March 8, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

This is an action to recover damages for personal injuries sustained by appellant on August 6, 1942, when a 1938 Ford truck driven by him was struck by the engine of a northbound freight train of respondent at the Keith Street crossing in the town of Timmonsville. At the close of appellant's testimony, the Court granted respondent's motion for a nonsuit on the ground of contributory negligence and gross negligence. The sole question presented on this appeal is whether appellant was guilty of contributory negligence or contributory gross negligence as a matter of law.

Respondent's tracks (main line and siding) in Timmonsville run approximately east and west, and on both sides, running parallel with the tracks, are paved driveways known as Main Street. Keith Street runs approximately north and south and intersects respondent's tracks and Main Street. Appellant, a minor nineteen years of age, lived about six miles from Timmonsville, knew the town well, and was conversant with the railroad crossings, having used them hundreds of times.

Appellant was alone in the truck and was the only witness who testified as to the facts connected with the accident. That portion of his testimony material to the issues on appeal was substantially as follows: On the day in question the weather was clear. About 11 o'clock that morning he

drove this truck into that portion of Main Street on the south side of the tracks and proceeded east along Main Street for a distance of one block to Keith Street. He then turned left into Keith Street for the purpose of crossing respondent's tracks. Although he did not hear the whistle blow or bell ring, he looked for approaching trains before going on the crossing and observed at this point the freight train in question which was about a quarter of a mile from the crossing. He had full opportunity to stop, but thinking that he had ample time to cross, he entered the crossing and for some reason which the record does not reveal, the truck stalled on the main line track. The engine was started but he had difficulty in getting the truck to pull in low gear. He put the truck in second gear and tried to drive off the crossing. About this time he saw the train was approaching closely and endeavored to get out of the truck. He had previously tied the right door with a rope. The left door was difficult to open. As his movements at this point are very material in passing on the issues on appeal, we prefer to quote directly from appellant's testimony. On cross examination the following appears:

'Q. Didn't you tell me a minute ago you could have gotten out except you were trying to get the truck off the track and the door was tied and you couldn't get out? A. Yes, but. it is difference.between getting out a door and out a window.

"Q. You admit if the door hadn't been tied, you could have gotten out the truck? A. Yes, sir."

On redirect examination he testified as follows:

"Q. When your truck stalled, as you said, what did you do? A. I cranked the truck and tried to get off the track.

"Q. You said something a while ago about trying to get out. Did you try to get out and if so when did you try to get out? A. Wherever (whenever) the truck stalled.

"Q. Was that after you had tried to start it and get it going or before? A. That was after I got it started; it didn't want to pull.

"Q. It didn't want to pull? I (it) wouldn't get to going fast or what? A. It wouldn't get to going fast. For some unknown reason it wouldn't pull in low gear. I had to put it in second and try to get off the track.

"Q. State whether or not it was after you go (got) it going in second gear that you tried to get out? A. I tried to get out after I got going.

"Q. Why did you try? A. I saw the train was getting close on the truck.

"Q. Were they making any effort at all that you could see to slow the train? A. No, sir."

Appellant further testified that the truck cleared the crossing with the exception of the back wheel. The engine struck the left rear side of the truck, turning it completely around, and appellant was thrown out. Appellant testified that he was not in position to estimate the speed of the train.

The specifications of negligence and recklessness alleged in the complaint are (1) that the crossing signals were not given, (2) that the train was traveling at an excessive rate of speed, (3) that the brakes were defective and in the exercise of ordinary care the train could have been stopped before the collision, and (4) that those in charge of the train failed to keep a proper lookout. Respondent denied all allegations of negligence and further pleaded contributory negligence, gross negligence, and recklessness on the part of appellant.

With reference to the specification that respondent failed to give the crossing signals required by Section 8355, Code of 1942, the neglect to do so would constitute negligence *per se*. However, to afford a basis for the recovery of damages, "it must appear that the failure to give the signals contributed as a proximate cause of the injury, but from such failure to give the signals a dis-

putable presumption arises in the first instance that such failure was the proximate cause thereof." *Ford v. Atlantic Coast Line R. Co. et al.,* 169 S. C., 41, 168 S. E., 143, 158. Any such presumption in this case is fully overcome by appellant's testimony. Appellant admits that before entering the crossing he saw the train approaching at a distance of a quarter of a mile away, but proceeded because he thought he had ample time to cross. The purpose of the statutory signals is to warn travelers about to use the crossing of the approach of the train. The ringing of the bell or blowing of the whistle could not have given appellant any more warning or information than he already had. Appellant's testimony completely rebuts any presumption and shows conclusively that there was no causal connection between the neglect to give the statutory signals and the collision at the crossing.

■ There is no testimony to support the specification that the train was being operated at an excessive rate of speed.

With reference to the third specification of alleged negligence in the complaint, appellant testified that shortly after he was carried to the doctor's office someone dressed in overalls came to the office; stated that he was trainmaster, and remarked that the train could have been stopped before the collision "if they had had any air to apply to the brakes," As to the fourth specification, it was the duty of respondent's servants in charge of the train to use due diligence in keeping a proper lookout in approaching the crossing. For the purpose of this discussion, we shall assume, without deciding, that the foregoing remark was admissible and that an inference may be drawn from the testimony that respondent was negligent in failing to keep a proper lookout, and we shall further assume, without deciding, that appellant was not negligent as a matter of law in proceeding to go across the track at the time in question. Notwithstanding these

assumptions, does appellant's conduct after the truck stalled show gross contributory negligence as a matter of law?

Appellant testified that at the time the truck stalled, the train was a quarter of a mile away. This gave him ample time to get out of the truck and off the tracks and thereby save himself. But this he did not undertake to do, but chose to remain in the truck in an effort to start it and in doing so he encountered difficulty with the gears. He made no effort to extricate himself from this peril until after he started the car. Having full knowledge of the condition of the doors of the car and the imminent danger from the approaching train, appellant recklessly took the chance of being able to start the car and drive it off the tracks before the train reached the crossing. The law regards a railroad crossing as a place of danger. "Both the traveler and the company are charged with the same degree of care; one to avoid being injured and the other to avoid inflicting injury. The care of each must be commensurate with the risk and danger involved. The greater the risk, the greater the care." *Robison v. A. C. L. R. Co. et al.,* 179 S. C., 493, 184 S. E., 96, 101. Under the circumstances, we think the conduct of appellant after the car stalled was not only negligent, but showed gross negligence. It is "well settled in this State that when one undertakes to go over a crossing in front of an immediately approaching train, he is guilty of gross contributory negligence as a matter of law." *Howell v. Southern R. Co.,* 192 S. C., 152, 5 S. E. (2d), 860, 861. We think it is equally as negligent to remain on a crossing when the train is immediately approaching where there is an opportunity for such person to get out of the way of the approaching train.

Appellant contends that notwithstanding any negligence on his part, his position of peril in the truck was apparent, or in the exercise of due care should have been apparent, to the engineer and fireman of respond-

ent's train in time to have enabled the engineer to have stopped the train before it collided with the truck, and that such negligence on the part of respondent was the proximate cause of his injury. If the appellant was on the track in a helpless condition, which in the exercise of ordinary care could have been observed by respondent, and if respondent in the exercise of due diligence in keeping a reasonable lookout ahead could have discovered his condition in time to avoid injuring him, but failed to do so, such failure on respondent's part would constitute negligence and if such, and not the negligence of appellant, was the proximate cause of the injury, respondent would be liable. *Leppard v. Southern Railway,* 196 S. C., 373, 13 S. E. (2d), 915. It is also true that if respondent was negligent and such negligence was subsequent to and independent of any carelessness on the part of appellant, and ordinary care on the part of respondent would have discovered the carelessness of appellant in time to avoid its effect and prevent injuring him, the negligence of appellant would then become remote in the chain of causation and would not be a proximate cause of his injury, but only a condition of its occurrence. *Bodie v. C. & W. C. Ry. Co.* 61 S. C., 468, 39 S. E., 715; *Seay v. Southern Railway Co.,* 205 S. C., 162, 31 S. E. (2d), 133. But we do not think the foregoing principles are applicable to the facts of this case. The engineer had a right to presume that an automobile crossing the railroad track a quarter of a mile ahead of his train would clear the track before the train reached the crossing. He was not called upon to presume that the automobile would stall on the track. Nor could he have reasonably anticipated that appellant would remain in the automobile after it stalled or that the doors were in such condition that appellant could not readily get out of the car. If appellant, with full knowledge of the condition of the doors, did not realize and appreciate his peril after the car stalled, it is difficult to perceive how he can justly charge that the engineer and fireman should have been

able to do so. If those in charge of the train were negligent in failing to observe and appreciate the attendant peril, appellant with better knowledge of the surrounding circumstances would be equally, if not more, negligent. There is no contention that the crossing was defective. Respondent was in no way responsible for the predicament in which appellant found himself, but it was brought about solely by the acts of appellant. It cannot be said that the negligence of appellant merely created a condition or was a remote cause, but on the contrary his gross negligence continued up to the time of the accident, and if not the sole cause of his injury, certainly combined and concurred with the negligence, if any, on the part of the respondent in bringing it about. *Robison v. A. C. L. R. Co. et al., supra; Keel, Administrator, v. Seaboard Air Line Ry.,* 122 S. C., 17, 114 S. E., 761.

In reaching the foregoing conclusion, we have not been unmindful of the rule that if the facts tend to show parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, the question then becomes one for determination by the jury. But it is equally well settled that if, as seems to us in this case, "it clearly appears from the evidence that there was contributory negligence or gross contributory negligence proximately entering into and contributing to the accident at the time of its occurrence, it is the duty of the court to so find as a matter of law." *Robison v. A. C. L. R. Co. et al., supra.*

The foregoing views in no wise conflict with the case of *Thompson v. Seaboard Air Line Ry.,* 81 S. C., 333, 62 S. E., 396, 20 L. R. A., N. S., 426. In that case plaintiff's intestate approached a crossing at night driving a wagon and pair of mules. At the crossing there was a shallow ditch and bridge on each side of the track. One of the front wheels of the wagon missed the bridge and went into the ditch, and the mules were thus held on the railroad track. A train was

approaching. The driver left his team and ran about a hundred feet toward the train, waving his hat in an effort to stop it. The train did not stop in time, and struck and killed both the driver and the mules. In an action for wrongful death against the railroad company, the Court held that the issues of negligence and contributory negligence were properly submitted to the jury. Although it was found that there was no evidence showing that the engineer was negligent in failing to see the deceased before he did, or failing to stop the train in time, the Court held that there was evidence that the defendant was negligent in the construction of the bridge and that a reasonable inference could be drawn that the plaintiff's intestate would not have entered the crossing had the statutory signals been given. It was stated that the driver's effort to signal the train was forced on him by defendant's negligence. There the peril of the driver was brought about by the negligence of the railway company. It is apparent that this case is readily distinguishable from the instant one.

Appellant's counsel state in their brief that "appellant was a minor, driving a borrowed truck, and naturally he tried as long as possible to save that truck from damage." His zeal to protect the property of another is commendable. But we think the following language from the case of *Temple v. Hawkins et al.*, 220 N. C., 26, 16 S. E. (2d), 400, 401, in which the facts are strikingly similar to those of the instant case, is applicable to appellant: "Plaintiff may have been courageous and loyal to the extent of being foolhardy in his effort to save his employer's truck. * * * Like Casabianca of old he stayed by his ship, alas, too long! This may, perhaps, have been praiseworthy, but the consequences thereof are not the liability of the defendants."

There was no error on the part of the trial Judge in granting the motion for nonsuit.

All exceptions are overruled and the judgment below affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Stukes and Taylor concur.