# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

MANHATTAN FOR HIRE CAR CORPORATION OF RICHMOND AND
CLIFTON WILLIAMS v. JEROME D. WILLIAMS.

November 27, 1950.

Record No. 3696.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*Lynwood E. Smith* and *Martin A. Martin*, for the plaintiffs in error.

*Charles Garian* and *Emanuel Emroch*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment entered on a verdict for $4,000, obtained by Jerome D. Williams against Manhattan For Hire Car Corporation and Clifton Williams, for personal injuries sustained by him when he was struck by a taxicab owned by defendant corporation and driven by the other defendant.

Defendants contend that the evidence for plaintiff is insufficient to sustain the verdict.

At approximately 6:00 p. m. on January 31, 1949, Jerome D. Williams, the plaintiff, was struck by the taxicab as he was walking between intersections across Leigh street in Richmond, Virginia.

Leigh street extends east and west and is approximately straight, level and 40 feet wide at the scene of the accident. There are two solid white lines in its center, indicating that east-bound traffic should use the 20 feet to the south, and west-bound traffic should use the 20 feet to the north of these lines. The two west-bound traffic lanes north of the center line are separated by a broken white line, thus making each traffic lane 10 feet wide.

Plaintiff testified that he and Pauline Hilton were walking

westwardly on the sidewalk on the north side of Leigh
street. After they had passed St. James street, which is the
first intersection with Leigh east of the scene of the acci-
dent, and before they reached Adams street, he stepped off
the curb, looked both east and west and saw no traffic
approaching from either direction. He then started diagon-
ally across Leigh street, but before reaching the center of
the street he was struck by the taxicab. He was knocked
"about 15 or 20 feet in the air" * * * "came down on the
hood of the cab" * * * and "rolled to the ground," in the
west-bound traffic lane. He did not see the taxicab until
the moment of impact.

Pauline Hilton testified that plaintiff left her on the north
sidewalk of Leigh street, a distance she estimated to be 35
feet east of its intersection with Adams street, and started
across Leigh street. At the time plaintiff "stepped off the
curb," and "as he got to the middle lane," she saw the west-
bound taxicab 65 or 70 feet east of Adams street, traveling
at a speed, she estimated to be, from 35 to 40 miles an hour.
The driver of the cab, without sounding its horn, or check-
ing its speed, struck plaintiff and knocked him "a good
fifteen or twenty feet in the air." (On cross-examination
this witness testified that plaintiff was knocked 30 feet "up
in the air.") He "fell back on the cab—on the hood of
the cab, fell hard enough to knock a dent in the hood."
The cab "rolled a few feet" after the impact and stopped.

Plaintiff contends that the testimony of these witnesses
proves that the plaintiff had walked 20 feet from the north
curb, in plain view of the driver of the taxicab, before he
was struck. If plaintiff was in plain view of the taxicab
driver, then the taxicab was in plain view of plaintiff, and
if neither saw the other, then both were guilty of negligence.

We said in *Jenkins* v. *Johnson*, 186 Va. 191, 42 S. E. (2d)
319:

"Both defendant and decedent had equal opportunity to
see each other and to avoid the collision. Neither exercised

proper care. Decedent's negligence was a contributing cause of his injuries."

Plaintiff, by his own testimony, admitted that he violated two mandates of section 46-243 of the 1950 Code, in that he, at night, between intersections, attempted to cross diagonally, a main traveled artery, divided into four lanes for motor vehicle traffic.

Since the adoption of the statutes regulating the rights of pedestrians and the drivers of motor vehicles upon the streets and highways, this court has repeatedly held that a pedestrian, for his own protection, is required to exercise a greater degree of vigilance when he crosses a street between intersections than he is required to exercise when crossing at intersections. The operator of a motor vehicle is required to exercise a greater degree of vigilance at a crossing than he is required to exercise between intersections.

There was no intervening vehicle to obstruct plaintiff's view of the approaching taxicab. He either did not look to the east, or, if he looked, he did so in such a careless and negligent manner that he failed to see what was obvious. In either event he was guilty of negligence as a matter of law.

Mr. Justice Miller, commenting on a similar situation, and speaking for the court, in *Hooker* v. *Hancock*, 188 Va. 345, 356, 49 S. E. (2d) 711, said:

"Each case presents its own problem. The only legal rule that can be laid down is that when undertaking to cross a street or highway, a pedestrian should exercise such care as an ordinarily prudent person would exercise under the existing circumstances, and especially when one attempts to cross a busy thoroughfare at night at a place other than a recognized pedestrian crossing, it is encumbent upon him to exercise reasonable care in looking for approaching traffic and to heed that which is dangerously near and open to ordinary observation. If, under such conditions, he carelessly undertakes to cross without looking, or, if looking, fails to see

or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law."

Plaintiff's statement that, as he stepped from the sidewalk into the street, he looked both east and west and saw no vehicles approaching is in conflict with the testimony of his own witness, Pauline Hilton, who saw the cab before plaintiff had taken more than a step or two in the street, and according to her estimated speed, he was struck in less than a second thereafter.

Clifton Williams, driver of the taxicab, testified that he was traveling at a speed of approximately 15 miles an hour in the west-bound traffic lane next to the curb, and before reaching Adams street, plaintiff stepped from behind a tree in front of his cab, the right front bumper struck him on his legs, the body fell over the hood, making a dent in the left side, and slid to the ground to the left of his cab. He stopped his cab almost instantly and went to the plaintiff, who was then lying across the white broken line approximately 10 feet from the curb.

This testimony is supported by two witnesses introduced by plaintiff and the physical facts. R. M. Warriner, a traffic officer, and Sam Downing, who lives at the northeastern corner of Leigh and Adams streets, testified that they reached the scene a few moments after the impact, and that the plaintiff was lying in the street about 10 feet from the north curb, between the broken white line and the solid white center lines, and that the cab was parked close to plaintiff, next to the north curb.

The physical facts are inconsistent with the testimony of plaintiff and Pauline Hilton to the effect that he was near the center of the street when he was struck.

■ Considering all the evidence, in the light most favorable to plaintiff, and all fair inferences therefrom, the only conclusion is that plaintiff was guilty of contributory negligence as a matter of law and such negligence was a proximate cause of his injuries.

The judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment will be entered for defendants.

*Reversed and final judgment.*