17109

KATIE CARMA, Appellant, v. WILLIAM O. SWINDLER, and ONE 1952 DODGE PICKUP TRUCK, bearing 1954 South Carolina License No. H-53720, Respondent

(91 S. E. (2d) 254)

*Messrs. McKay, McKay, Black & Walker,* of Columbia, *for Appellant,*

*Messrs. Frank L. Taylor* and *Eugene F. Rogers,* of Columbia, *for Respondent,*

January 26, 1956.

LEGGE, Justice.

While walking across a paved highway after dark, appellant was struck by respondent's truck, and she brought this action to recover damages for resulting personal injury. She appeals from an order of nonsuit.

On the evening of October 30, 1953, about seven o'clock, appellant, a colored woman aged fifty-four years, was returning on a bus from Columbia to her home in or near the State Park Division of South Carolina State Hospital, which is located on the two-lane paved highway known as Farrow Road, about six miles out of the city. In company with her were her adopted daughter, Mary Ann, aged fourteen, Bertha Taylor and her infant son, Gracie Harrell and Rebecca Stevenson. They all lived at or near State Park, and all alighted from the bus at its usual stopping place, opposite the junction of a dirt road running along the outside of the fence enclosing the State Park property. Farrow Road in this vicinity is straight and level, and its pavement is twenty-one feet in width.

Bertha Taylor testified that one car passed on the highway before she got off the bus, and another as she was getting off; that after she and the others had alighted from the bus they waited until the bus had proceeded a short distance (which she estimated to be a little less than the length of the court room), and then started to cross the highway; that Gracie Harrell and Rebecca Stevenson and Mary Ann crossed the highway first and appellant and the witness, who was carrying her child in her arms, followed; that witness looked both ways before starting to cross, and saw no vehicle, nor any light approaching from either direction; and that when witness was not quite half-way across, appellant, who was slightly ahead of her and about three or four steps from the farther edge of the pavement, was hit by the truck, which witness then saw for the first time. She testified that appellant was thrown about fifteen feet, and into the ditch, and that after striking her the truck proceeded down the highway a distance of about the length of the court room before coming to a stop. She had no idea of the speed of

the truck, and was unable to say whether its lights were burning either before or after the accident.

Appellant testified that before she started to cross the highway she looked both ways and saw nothing; that she was "just about across" when she was struck; that she did not see the truck at all, and heard no horn nor any sound of brakes being applied. She testified that the two cars that passed while she and the others were getting off the bus had their lights burning. She was knocked unconscious and did not regain consciousness until she was in the hospital.

Mary Ann Carma testified that after they had all alighted from the bus she looked both ways and saw the truck with its lights burning, "about a block up the road" (which on cross examination she estimated as a distance about equal to the length of the court room), and approaching rapidly; that she then walked across the highway and had just gotten on the dirt road when the truck struck appellant, who at that time lacked "about two steps" of completing her crossing of the pavement. Although she testified under further questioning by her attorney that she actually saw the truck strike appellant, her earlier testimony on direct examination in that regard was as follows:

"Q. Did you have an opportunity to yell to your mother that the truck was there? A. No.

"Q. Why didn't you? A. Time I got off the pavement and turned around to see if she was coming behind me, the truck hit her, and when I seen her she was over in the ditch."

She testified that she heard neither horn nor the sound of brakes being applied; and that after striking appellant the truck proceeded "half a block" down the road before coming to a stop.

Appellant's husband, who did not witness the accident, testified that on the following day he examined the locus for skidmarks, but found none; that in the direction from which the truck had come there was, on the highway, about two

hundred paces from the point of the accident, a sign indicating a speed limit of thirty-five miles per hour, and near it another sign reading "Watch Out For Aged And Helpless"; and that, in addition to other lights along the front of the State Hospital property, there was one, which had been burning on the night of the accident, near the corner of the fence along which the dirt road runs, at a point some nineteen paces from the edge of the Farrow Road.

Appellant's only other witness was the physician who had attended her at the hospital, and whose testimony is not pertinent to the issue now before us.

At the conclusion of appellant's case, respondent moved for a nonsuit upon the ground that there had been no proof of negligence on his part, and upon the further ground that even if the evidence be viewed as tending to establish such negligence it was susceptible of no reasonable inference other than that appellant had been guilty of contributory negligence. The trial judge's remarks following the argument indicate that the motion was granted upon the latter ground.

In *Spearman v. Couch*, 218 S. C. 430, 63 S. E. (2d) 161, a pedestrian had been struck by a motor vehicle while attempting to cross a four-lane highway, in a thirty-five-mile speed zone, at a point opposite its junction with a street, the accident occurring about seven o'clock on a misty December evening. Verdict was for the plaintiff, and on appeal one of the issues discussed was the applicability of Section 1616 (28) of the 1942 Code, which provided that "Every pedestrian crossing a highway, except where traffic control signals are provided, shall yield the right-of-way to all vehicles upon the highway." This court declared that in the light of that statute, there being no traffic control signals at the intersection in question, the trial judge was in error in holding, in his order refusing defendant's motion for judgment n. o. v., that a pedestrian has an equal right with motor vehicles in crossing a street at an intersection, and is not required as a matter of law to yield the

right-of-way to them. But this error was held to be harmless because it could not be said, from the evidence, that plaintiff was guilty of more than simple negligence, and there was testimony that the motor vehicle was being operated at a rate of speed as high as seventy miles per hour, thereby warranting the conclusion that the defendant was guilty of gross negligence, as to which plaintiff's contributory negligence would be no defense; and the judgment of the lower court was accordingly affirmed.

By the Act of June 7, 1949, XLVI Stat. at L. 466, Code 1952, § 46-201 *et seq.* the laws regulating traffic on highways and streets were comprehensively revised, and Section 1616 of the 1942 Code was, among others, expressly repealed. The following portions of the 1949 Act are of interest here:

Section 14(a), Code 1952, Section 46-251, defines " 'street' or 'highway' " as "The entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel".

Section 14(c), Code 1952, Section 46-254, defines "roadway" as "that portion of a highway improved, designed or **ordinarily used for vehicular travel, exclusive of the shoulder** or berm."

Section 14(d), Code 1952, Section 46-256, defines "sidewalk" as "that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians."

Section 15(a), Code 1952, Section 46-257, defines "intersection" as "the area embraced within the prolongation or connection of the lateral curb lines or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles * * *."

Section 16, Code 1952, Section 46-258, defines "crosswalk" as (1) "That part of a roadway at an intersection included within the connections of the lateral lines of the

sidewalks on opposite sides of the highway measured from the curbs or in the absence of curbs from the edges of the traversable roadway; or (2) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

Section 91(a), Code 1952, Section 46-433: "When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. * * *"

Section 92, Code 1952, Section 46-435: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. * * *"

Section 93, Code 1952, Section 46-442: "Notwithstanding the provisions of this article every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

In *Wright v. South Carolina Power Co.*, 205 S. C. 327, 31 S. E. (2d) 904, where a pedestrian, attempting to cross a city street in the middle of a block and at an angle, was struck by a bus, toward which she was walking, we held that she was guilty of contributory negligence as a matter of law, because there was no obstruction to her view of the approaching bus, which was more readily perceptible to her than she was to its driver.

In *Smith v. Biggs,* 4 Cir., 223 F. (2d) 839, the accident occurred on the west-bound roadway of a dual lane highway, the two roadways being separated by a grass strip. The motorist had, by driving on the left side of the roadway, passed an automobile proceeding in the same direction, and was on the left side of the roadway when his car struck and killed a pedestrian who was either walking on the roadway or attempting to cross it. Judgment for the plaintiff was reversed on appeal, the court holding that the facts clearly showed the deceased to have been guilty of contributory negligence as a matter of law, and pointing out that for more than a quarter of a mile east of the point of impact the road was stright and clear, that had the deceased looked he could not have failed to see the light of the approaching car, that the accident did not occur at a crosswalk or intersection, and that plaintiff's intestate was wearing dark clothes, which rendered it more difficult for him to be seen by motorists.

At all crosswalks as defined in Section 46-258, *supra,* the driver of a vehicle must, except when traffic control signals are in operation, yield the right-of-way to a pedestrian crossing the roadway within the crosswalk, marked or unmarked, when the pedestrian is upon the driver's half of the roadway or approaching so closely from the opposite half of the roadway as to be in danger; and, to so yield, the driver must, if need be, slow down or stop. Sections 46-433 and 46-435 *supra.* It will be observed that unmarked crosswalks exist only at intersections, i. e. intersection of ways "publicly maintained". Sections 46-257, 46-251, *supra.* The junction of an unimproved road, publicly maintained, with a paved highway, is an "intersection". *Reese v. National Surety Corp.,* 224 S. C. 489, 80 S. E. (2d) 47. But both must be publicly maintained.

It is manifest, therefore, that in the case at bar the relative rights and duties of the parties were dependent upon whether the unimproved road leading from the Farrow Road at the point where appellant was attempt-

ing to cross the latter was publicly maintained, or not. If it was publicly maintained, then appellant, on or dangerously near respondent's half of the roadway, had the right-of-way, and, regardless of whether or not he was in a 35-mile speed zone, it would have been his duty to slow down, or even to stop, in order to let her cross. If, on the other hand, it was not publicly maintained, then it would have been appellant's duty to yield the right-of-way to respondent's vehicle, Section 46-435, *supra,* and his right to rely upon the posted speed limit would have been subject only to his duty to exercise "due care" to avoid colliding with her, Section 46-442, *supra.* We note, in passing, that the sign cautioning drivers to "Watch Out For Aged And Helpless" obviously had reference to inmates of the adjacent State Hospital, and did not affect the legal obligation of respondent to appellant, who was neither aged nor helpless.

The burden of proof rested upon appellant, if she sought the benefit of the statute, to prove that the dirt road in question was publicly maintained. Cf. 25 Am. Jur., Highways, Section 47, p. 365, *State v. Miller,* 130 S. C. 152, 125 S. E. 298. Such proof being wholly lacking, it follows that she must be held subject to the requirement of Section 46-435, whereby it was her duty, while crossing the roadway, to yield the right-of-way to respondent's vehicle.

We find no evidence in the record justifying the inference that respondent, if negligent at all, was guilty of more than simple negligence. And we think that the evidence on behalf of appellant points conclusively to contributory negligence on her part. It was her duty before attempting to cross the highway, to see that the way was clear, especially since she was about to cross at a point where vehicular traffic had the right-of-way; and her failure to look would have been contributory negligence. Had she looked, she could not have failed to see, as her daughter did, the lights of respondent's truck approaching. It is obvious therefore that she either did not look or, if she looked,

she did so in such careless fashion as not to see what was in plain view. In either case she was guilty of contributory negligence as a matter of law. *Manhattan For Hire Car Corporation of Richmond v. Williams,* 191 Va. 489, 62 S. E. (2d) 10.

Affirmed.

STUKES, TAYLOR and OXNER, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.