# Richmond

## Edward Lee Cook v. Ruby Shoulder.

December 1, 1958.

Record No. 4844.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Richard W. Smith* (*Wayt B. Timberlake, Jr.; Timberlake & Smith*, on brief), for the plaintiff in error.

*Philip Lee Lotz* (*Forest T. Taylor*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ Mrs. Shoulder sued Cook, alleging damages for personal injuries received when she, a pedestrian, was struck by his automobile, at about 4:50 p.m., on U. S. Route 254, west of the corporate limits of the city of Staunton. In his grounds of defense Cook denied any negligence on his part and charged that Mrs. Shoulder was guilty of contributory negligence.

Upon the trial of the case Cook's motion to strike the plaintiff's evidence at the conclusion thereof was overruled, and at the conclusion of all the evidence the court again overruled his motion to strike. The court held, however, that Mrs. Shoulder was guilty of negligence as a matter of law but ruled that the case should go to the jury on the issue of last clear chance. The case was thus submitted to the jury under a last clear chance instruction over the objection and exception of the defendant.

Following a verdict for the plaintiff, defendant moved that it be set aside as contrary to the law and the evidence and without evidence to support it. The motion was overruled and final judgment entered. We granted defendant a writ of error.

Defendant assigns four errors and says: "The controlling issue is whether the judgment can be sustained under the last clear chance doctrine which was submitted to the jury over defendant's objection."

Stripped of non-essentials, the record discloses that the highway at the point of accident runs east and west and is a macadam road 19 feet wide, marked into two lanes of travel. It was raining hard at the time of the accident, and the visibility was poor. Defendant was driving his automobile east toward Staunton and the plaintiff was in the act of crossing the highway from north to south at a point where a road or driveway intersects the highway. The road is straight at that point, and in the direction from which defendant was coming, normally his car would have been visible for more than 300 yards.

Plaintiff's husband was seated in the front of his automobile which was parked facing south, on the intersecting dirt road, about 12 or 15 feet from the southern edge of the hard surface of the highway. He had come there to meet his wife who had alighted on the north side of the highway from a bus which was traveling west. While he did not see the impact, looking through the rear window

of his car he watched his wife as she attempted to cross the highway. It was necessary for Mrs. Shoulder, after alighting from the bus, to cross to the south side of the highway in order to join her husband. She said she raised her umbrella and waited for the bus and two cars behind it to pass; that before undertaking to cross she first looked to the east and then to the west and saw nothing coming. She said the visibility was such that she could barely see the bus and the two cars following it when she started to cross; that she could not estimate the distance she could see; that she then walked "pretty fast", about as fast as possible without breaking into a run, and crossed the westbound lane of the highway, momentarily paused in the center of the road and again looked both directions and saw nothing coming; whereupon, continuing her fast pace, she left the center of the highway and proceeded to cross the eastbound lane when she was struck by defendant's car. Mrs. Shoulder described her attempted crossing as follows:

"Q. Isn't it true that you ran across the road?

"A. I didn't run. I was walking pretty fast.

"Q. You were walking as fast as possible without breaking into a run?

"A. Yes, sir.

"Q. Are you certain you were not running?

"A. Yes, sir.

"Q. Is that correct?

"A. Yes, sir.

"Q. After you got to the center of the road, you paused a second or so?

"A. Yes, sir.

"Q. You still didn't see the Cook car?

"A. No, sir.

"Q. You never did see it until you were actually struck?

"A. I didn't see it then.

"Q. You never did see the car?

"A. No, sir.

"Q. You can't tell the court and jury where the Cook car was when you crossed the road?

"A. I didn't see it.

"Q. You can't say where it was as you got to the center because you didn't see it?

"A. That's right."

It is obvious that Mrs. Shoulder at no time saw the defendant's automobile which was manifestly within her view.

Plaintiff's husband testified that defendant's car came to a stop about 128 feet from the point of impact; that plaintiff was thrown 29 feet into a ditch which was located 8 feet from the south side of the highway; that defendant's car had no lights on it after the accident; that due to poor visibility he had operated his car with headlights on low beam.

Defendant testified in his own behalf and also called his passenger, John Ott, as a witness. Except for distances the evidence of the defendant and Ott did not vary materially from that of plaintiff. Defendant said he was on his way to work with Ott, a fellow workman; that he was traveling in his proper lane at an estimated speed of 30 to 35 miles per hour; that his parking lights were on. Ott fixed the speed at from 30 to 40 miles an hour. Defendant saw the bus and one or two cars approaching as he neared the scene of accident. There is some conflict in defendant's version of where plaintiff was when he first saw her. He says he saw her running across the road from behind a westbound car, with her umbrella over her head. However, there is no conflict in the evidence that both defendant and Ott saw the plaintiff stop in the center of the road and look in their direction. This fact is in agreement with plaintiff's own testimony. At the time she stopped she was in plain view of defendant and his passenger, Ott, and there was nothing to obstruct her view of the oncoming car.

Ott stated he plainly saw her face as she lowered her umbrella and that her face was not visible again until the impact; that she stopped before entering the eastbound lane, looked, and started running again; that when he first saw her she was running at a point in the middle of the westbound lane, and between 50 and 60 feet from the approaching car; that when she ran from the center of the road into the eastbound lane she was one and one-half car lengths from defendant's car.

The farthest distance defendant puts her from his car is 100 feet when he saw her at the side of the highway, and 50 feet when she started to cross the eastbound lane. He testified that he veered to the right when he saw her crossing the westbound lane, and when she started moving again after stopping in the center, he put on his brakes and cut to the right and then to the left in an effort to miss her, skidding his car in the process; that about three inches of the

right front headlight struck plaintiff when she was about halfway across the eastbound lane, and that he almost missed her completely.

Under the related evidence the negligence of the plaintiff is inescapable, and the court properly ruled that she was guilty of negligence as a matter of law.

While it is true that the weather conditions then prevailing rendered the visibility poor, the evidence discloses that both Cook and his passenger, Ott, saw Mrs. Shoulder just before she entered the highway and, she being visible to them, surely the automobile would have been visible to her had she looked. Then, too, the husband had seen his wife crossing the highway, and she saw his car parked on the south side waiting for her.

We have held that where a pedestrian looks for an approaching automobile before attempting to cross a street or highway he is presumed in law to have seen that which he should have seen had his observation been careful and attentive. He cannot justify by saying that he looked and did not see the approaching car that injured him when, if he had looked, he must have seen it. *Hooker* v. *Hancock*, 188 Va. 345, 49 S. E. 2d 711.

In this instance Cook first became aware of the presence of Mrs. Shoulder when she was standing on the side of the highway, at which time he was 100 feet from her. She was then in a place of safety and, as aforesaid, his car was obviously plainly within her view. She left this place of safety and, walking fast, crossed the westbound lane of the highway; she momentarily paused before entering the eastbound lane, at which time she struck out across the lane directly into the path of the car. Until she started to cross the eastbound lane, there was nothing to indicate to defendant that she would recklessly undertake to cross that lane in front of his car for he had just observed her look toward his plainly visible oncoming vehicle. When she entered the lane the automobile was within 50 or 60 feet of her, traveling at the normal rate of 30 to 40 miles an hour. The distance the car had to travel before striking Mrs. Shoulder at the speed at which it was traveling involved only a fraction over one second in time.

The last clear chance doctrine, whether considered as a limitation upon or an exception to the common law rule of contributory negligence, allows a negligent plaintiff to recover only if his negligence was in fact not a proximate cause but only a remote cause or condition of the accident, and the negligence of the defendant was

the sole proximate cause. Where the opportunity to avoid an accident is as available to the plaintiff as to the defendant, then the plaintiff's negligence is not a remote cause but continues as a proximate cause. *Hopson* v. *Goolsby*, 196 Va. 832, 840, 86 S. E. 2d 149, 154; *Greear* v. *Noland Co.*, 197 Va. 233, 238, 89 S. E. 2d 49, 53.

In this instance it is clear that Mrs. Shoulder was not a helpless person in peril. She was inattentive and negligent. She could have avoided the mishap at any time before she was struck, and her active negligence continued up to the time of the impact. Under the rule approved in *Greear* v. *Noland Co.*, *supra*, (197 Va., at pp. 238, 239) Cook's duty did not begin until after he saw Mrs. Shoulder and realized or should have realized that she was in danger and oblivious of her peril. The question arises as to whether or not at that time he was negligent in failing to exercise ordinary care when once his duty began. This poses the question: Did he have time for effective action? If not, his chance was not a clear chance. The rule presupposes time for effective action and is not applicable when time it too short to avoid the accident by the exercise of reasonable care. *Stark* v. *Hubbard*, 187 Va. 820, 48 S. E. 2d 216; *Davis, Adm'x* v. *Scarborough*, 199 Va. 100, 97 S. E. 2d 731.

The evidence discloses that Cook made strenuous efforts to save plaintiff from the consequences of her negligence. It shows that the distance of 50 feet did not afford defendant, traveling at 30 to 40 miles an hour, an opportunity for effective action. Plaintiff has failed to carry the burden of proof to the contrary. Defendant cannot be charged with a wrong choice of action (if such be shown) under the emergency created by the plaintiff. Under the evidence, there was not sufficient time for effective action after Cook discovered Mrs. Shoulder's peril. In order to apply the doctrine of the last clear chance we would have to disregard the continuing negligence of the plaintiff and hold that such was not a cause but only a condition of the accident, when clearly it was an immediate, proximate and efficient cause thereof. It never became remote. *Hardiman* v. *Dyson*, 194 Va. 116, 122, 72 S. E. 2d 361, 365.

The trial court should have sustained defendant's motion to strike the evidence or should have set aside the verdict and entered judgment for the defendant. Since it appears that all of the facts were fully developed in the trial, the judgment complained of is reversed and final judgment entered here for the defendant. Code, § 8-493.

*Reversed and final judgment.*