## 18173

Agnes HOPKINS, Respondent, v. Ralph J. REYNOLDS and Jacob Garrick, Appellants

(135 S. E. (2d) 75)

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Appellants,*

*Messrs. Belser, Belser & Baker* and *Alexander M. Sanders, Jr.,* of Columbia, *for Respondent,*

February 27, 1964.

LEWIS, Justice.

This action was brought by the plaintiff to recover damages for personal injuries sustained when she was struck by an automobile while attempting to cross the highway in front of her home. The automobile which struck her was owned by the defendant Ralph J. Reynolds and operated at the time by his employee, the defendant Jacob Garrick, within the scope of his employment. From a verdict for the plaintiff, the defendants have appealed.

Under the exceptions, our review of the record is solely to determine whether the trial judge erred in refusing the motion of the defendants for a directed verdict in their favor. The defendants contend that their motion should have been granted because the evidence failed to show any actionable negligence or recklessness on their part and, even if such was shown, the only reasonable inference from the testimony was that the plaintiff was guilty of contributory negligence and recklessness so as to bar her of recovery.

The plaintiff, 78 years of age, lived with her son on Highway No. 769 in a rural section of Richland County, South Carolina. A driveway leads from the home to the highway, and directly across the highway from the driveway is their mailbox. Highway No. 769 is a paved road, 18 feet in width with dirt shoulders about six feet wide, and runs generally in a north-south direction in front of plaintiff's home which is located on the west side thereof and the mailbox on the east side. From the mailbox, looking south in the direction from which the defendant's automobile came, the highway is straight for two-tenths of a mile to a point where the road begins to curve.

On December 11, 1961, about four o'clock P. M., the plaintiff left her home to walk to the mailbox. In doing so, it was necessary for her to cross the paved highway. As she was walking across the road toward the mailbox, she was struck by, or ran into, the left front fender of the

defendant's automobile which approached from her right travelling in a northerly direction. The plaintiff was struck after she had crossed the south bound lane of the road and entered the north bound lane of travel of the automobile. The automobile was proceeding in its proper lane of travel and was brought to a stop within two or three car lengths from the point of impact.

While the plaintiff was 78 years of age and walked slowly, the testimony is uncontradicted that her vision and hearing were not materially impaired. She testified that she did not see the automobile that struck her and that she walked onto the paved highway without stopping.

Although the plaintiff's son did not see the accident, he was working nearby and testified that, as his mother was walking toward the highway and was about 10 feet from the edge thereof, he saw the defendant's automobile approaching about 300 feet away and travelling 50 to 55 miles per hour. He said that it was foggy and drizzling rain at the time and that he could make out that it was an automobile at that distance. The record is clear, however, that the weather conditions did not materially affect the ability of either party to see the other within a reasonable distance.

The defendant Garrick, the driver of the automobile was called as a witness for the plaintiff. He testified that, when he first saw the plaintiff, to whom he was related, he was about 100 to 150 feet from her and travelling about 45 miles per hour. He described the circumstances surrounding the accident as follows: "When I first saw her (plaintiff), she was walking out of her driveway up to the asphalt road. She walked up to the road and stopped, and looked in my direction as if she was waiting for me to go by, and I started on by, and just then she walked off, and I hit my brakes and pulled to my right to try to miss her, but she was still coming to me." His testimony was that he did not sound his horn to warn the plaintiff of his approach because she had stopped at the edge of the road, apparently

to wait until he passed, and that; when she walked into the highway, he did not have time to do so.

The facts of this case are strikingly similar to those in the case of *Carma v. Swindler,* 228 S. C. 550, 91 S. E. (2d) 254. There the plaintiff, after first looking in both directions and seeing no vehicle and hearing no horn, attempted to cross in the night time a 21 foot roadway. When she had almost crossed the road, she was hit by the defendant's truck. Her daughter, who was with her, testified that she looked both ways before crossing the road and saw the defendant's truck with its lights burning about a block away and approaching rapidly. In the *Carma case* the same statutory provisions relating to pedestrians and the sounding of horns by operators of motor vehicles were involved as are urged here. The Trial Judge granted a non-suit on the ground that the evidence conclusively showed that the plaintiff had been guilty of contributory negligence. The following language of the Court in affirming the decision of the lower court in the *Carma case* is appropriate and conclusive here: "We find no evidence in the record justifying the inference that respondent, if negligent at all, was guilty of more than simple negligence. And we think that the evidence on behalf of appellant points conclusively to contributory negligence on her part. It was her duty before attempting to cross the highway, to see that way was clear, especially since she was about to cross at a point where vehicular traffic had the right-of-way; and her failure to look would have been contributory negligence. Had she looked, she could not have failed to see, as her daughter did, (here plaintiff's son) the lights of respondent's truck approaching. It is obvious therefore that she either did not look or, if she looked, she did so in such careless fashion as not to see what was in plain view. In either case she was guilty of contributory negligence as a matter of law. *Manhattan For Hire Car Corporation of Richmond v. Williams,* 191 Va. 489, 62 S. E. (2d) 10."

The plaintiff's son testified that immediately after the accident the defendant made the statement that he didn't see the plaintiff "when he hit her or he wouldn't have hit her." We have not discussed this statement because it was not relied upon or given any weight by counsel in their arguments. Irrespective, however, such testimony, if given full weight, does not alter our view that the plaintiff was guilty of contributory negligence so as to bar her of recovery.

The plaintiff contends, however, that, even if she was guilty of negligence, the evidence sustains liability of the defendants under the last clear chance doctrine. This doctrine is not available where, as in this case, the injured party was guilty of contributory negligence as a matter of law. Otherwise, contributory negligence as a defense would disappear. *Bishop v. Atlantic Coast Line R. Co.,* 213 S. C. 125, 48 S. E. (2d) 620; *Ingram v. Smokey Mountain Stages, Inc.,* 225 N. C. 444, 35 S. E. (2d) 337; *Cook v. Shoulder,* 200 Va. 281, 105 S. E. (2d) 860. See: 4 (Part 2) Blashfield's Cyclopedia of Automobile Law and Practice 417, Section 2814; 7 Am. Jur. (2d) 927, Section 379.

It is argued that the defendant failed to take reasonable precautions to avoid striking the plaintiff after he observed her in a place of peril. The driver of the automobile testified that he first saw the plaintiff when he was 100 to 150 feet away and that she had stopped at the edge of the road and looked in his direction as if to wait until he passed. The plaintiff said that she walked into the highway without stopping and did not see the car. Her son testified that he saw the approaching vehicle when it was 300 feet away and that his mother was then 10 feet from the edge of the road. The speed of the car was estimated at from 45 to 55 miles per hour, which was within the maximum speed limit. Under any view of the testimony, the distance that the car had to travel before striking the plaintiff involved only three to five seconds

in time. Both parties were in plain view of each other and, when the driver first saw the plaintiff, she was at the edge of the roadway in a place of safety. The driver, under the circumstances, had the right to assume that the plaintiff would not leave a place of safety and undertake to cross the highway in front of an oncoming vehicle. Under the evidence, there was not sufficient time for effective action after the peril of the plaintiff became apparent.

However, regardless of the view taken of the testimony in this case, the fact remains that by the exercise of due care the plaintiff could have avoided the accident by simply stopping at anytime before she was struck. Yet, after the car could have been seen, she continued to walk from a place of safety into the oncoming vehicle. Her active negligence continued up to the time of the impact and bars recovery.

In the foregoing *Bishop case,* the applicability of the last clear chance doctrine was involved. In holding that the doctrine was not available, due to the contributory negligence of the injured party, the Court said: "The doctrine now sought to be invoked by appellant is not applicable to the facts of this case. We think the only inference to be drawn from this testimony is that the deceased was guilty of concurrent and continuing negligence up to the time of the collision. *Truett v. Atlantic Coast Line Railway Co.,* 206 S. C. 144, 33 S. E. (2d) 396. It would seem illogical to hold that due care by respondents would have prevented the accident and yet ignore the correlative fact that due care by the decedent would also have prevented it."

Reversed and remanded for entry of judgment for the defendants.

TAYLOR, C. J., and MOSS and BRAILSFORD, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

It is with regret that I find myself unable to agree with either the reasoning or the result reached in the majority

opinion. As stated therein, the sole issue before us is whether the trial judge erred in refusing a motion of the defendants for a directed verdict in their favor.

To bring the discussion of this issue within proper focus, although perhaps not necessary, I shall restate the elementary propositions of law governing the decision of this issue. As stated in so many of our decisions, in passing upon a motion for a directed verdict, or a judgment *non obstante veredicto,* the evidence and all inferences reasonably deducible therefrom must be taken strongly against the moving party and considered in the light most favorable to the nonmoving party, and if more than one reasonable inference can be drawn from the evidence, or the inferences to be drawn therefrom are in conflict or doubt, the trial judge should refuse the motion and submit the case to the jury.

For the sake of convenience, I shall herein refer to respondent simply as plaintiff and to appellant Jacob Garrick as the defendant. The other appellant was not present at the scene of the collision which gave rise to this cause of action, and is involved herein only under the doctrine of *respondeat superior.* Viewing the evidence in the light most favorable to the plaintiff, as we are required to do, I conclude from my review of the evidence, and the inferences reasonably deducible therefrom, that the facts of this case are as follows:

The plaintiff is an elderly woman, being 78 years of age at the time of the collision and nearly 80 years of age at the time of the trial. She was in good physical condition, with her vision and hearing not materially impaired, for a person of her years. She, however, was unable to move rapidly and at all times walked slowly. She resided with her son and his family in a rural section of lower Richland County, near Gadsden on Route 769, which is a paved rural farm to market road. The residence was located on the west side of said highway, about a "block" therefrom. The distance from this residence to the city limits of Columbia is not disclosed by the record, but reference to a

map of the South Carolina Highway Department indicates that distance to be some fifteen or more miles.

The collision occurred at 4 o'clock in the afternoon of December 11, 1961, when plaintiff attempted to cross the paved highway en route to the mail box which was on the opposite side of the highway from her home. It is undisputed in the record that it was both drizzling rain and foggy at the time, visibility being obscured to the extent that plaintiff's son (a witness), who was on a tractor in the field some distance from the highway, could barely discern at a distance of some three hundred feet that the approaching automobile of the defendant, a gray almost white one, was in fact a car. At that moment, the car was proceeding diagonally across the line of the witness' vision, and I think it is a matter of common knowledge that a rapidly moving object crossing one's line of vision is much more readily discernable than is either a slowly moving object, or an object moving at a rapid speed in one's direction out of the fog. It is worthy of note that this witness was not even cross-examined as to the limited visibility existing at the time and no other witness who testified offered any evidence as to the visibility conditions existing at the moment.

The defendant's automobile was proceeding north in its proper lane and, in the light most favorable to the plaintiff, at a speed of 55 miles per hour. At a point opposite the mail box, defendant's automobile struck the plaintiff while she was in the northbound lane, nearly across the paved portion of the highway by the mail box. The automobile at some time veered to its right and came to rest on its right-hand side of the road, angling off on the dirt shoulder. The distance which defendant's car traveled after striking plaintiff was estimated by the witnesses in car lengths, but there was evidence to the effect that the blow forced the plaintiff forty-five to fifty feet along the highway, this distance being stepped off, and evidenced that the car went a car length and a half beyond where the plaintiff came to rest. The plaintiff was most seriously injured, having her right leg

broken below the knee, and her left leg broken in the hip area, the medical testimony being to the effect that both fractures were definitely impact fractures.

These circumstances, in my opinion, give rise to the reasonable inference that plaintiff was struck by the bumper of defendant's automobile, rather than the left-front fender, as argued by the defendant and stated in the majority opinion. In fact, the defendant himself testified that he did not know what part of the car struck the plaintiff. I quote in part from his testimony.

"Q. What part of your car struck Agnes?

"A. The front part.

"Q. The front part?

"A. Yes, sir.

"Q. The bumper?

"A. I couldn't tell whether it was the bumper or not."

The plaintiff and the defendant were well acquainted and, in fact, were distantly related. The defendant summoned the plaintiff's son from the nearby field and, according to the son, made the following statement, "He said then, in the presence of me—he said that he didn't see her when he hit her or he wouldn't have hit her." For some reason not readily apparent in the record, plaintiff's counsel elected to put the defendant Garrick on the stand. Even though he was the defendant, the trial judge would not allow plaintiff's counsel to cross-examine him. On the other hand, this defendant was exhaustively cross-examined by his own counsel. At no point did he deny making the statement attributed to him, nor was the making of the statement denied by defendant's wife who, inferentially, was present at the time it was made.

The plaintiff, as a result of her serious injuries, went into severe shock which affected her mentally. She convalesced very slowly, and it is readily inferable from the evidence that she had not recovered fully either physically or mentally at the time of the trial. It is understandable that

she was not the most alert and astute witness when she herself testified. With respect to the issue before us, her only pertinent testimony was as follows:

"Q. Can you tell us what happened as you remember it?

"A. I remember when I was going across the road—I didn't see no car—and when I got across the road he knocked me down. * * *

"Q. Do you remember if you stopped before you crossed the road or not?

"A. No, sir, I didn't stop."

Under all of the circumstances, I think the jury could reasonably have inferred that the plaintiff did look before she attempted to cross the road, but did not see the defendant's car, a gray almost white one, approaching her in the fog on a late December afternoon near sundown. There is not even a suggestion that the defendant's automobile had any lights on it to attract plaintiff's attention.

It is, of course, elementary that in the determination of whether or not a person is or is not negligent, the conduct of the party has to be considered in the light of all the circumstances existing at the moment of acting or deciding to act. The plaintiff's conduct also has to be judged in the light of the rule of law that she was entitled to assume, in the absence of facts putting her on notice to the contrary, that the driver of any vehicle upon the highway, including the defendant, would drive in compliance with the applicable statutes, the common law rules of the road, and the dictates of ordinary prudence and reason.

What then were the circumstances existing at the moment plaintiff decided to cross the paved highway, and what were the circumstances existing as she continued her journey across? While the road was a paved one, it is fairly inferable that the scene was a relatively quiet, rural one, completely removed from the hustle and bustle of a metropolitan area and from the roaring traffic of one of the major highways of the state or nation. She was crossing at a place

other than a crosswalk where the statute commanded her to yield the right of way to vehicular traffic. Right of way denotes nothing more than the privilege of the immediate use of the highway. 1962 Code, Section 46-266. I do not think that the statute could be soundly construed to require pedestrians to yield the right of way to a vehicle which was either out of sight and nowhere near the portion of the highway about to be immediately used by the pedestrian, or to a vehicle which could only reach that immediate area, before the pedestrian crossed, by being driven in an improper and unlawful manner.

Moreover, with respect to the right of way, Code Section 46-442 reads as follows:

"Drivers to exercise due care.—Notwithstanding the porvisions of this article every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

While the *prima facie* speed limit at the location was 55 miles per hour, the statutory commands of Sections 46-361 and 46-363 are to the effect that no person shall drive at a rate of speed that is greater than reasonable and prudent and with a regard to actual and potential hazards then existing, and that one shall drive at an appropriately reduced speed when any special hazard exists with respect to pedestrians * * * or by reason of weather or highway conditions.

Code Section 46-521 requires that vehicles shall display lighted lamps and illuminating devices as prescribed by the statute at any time when there is not "sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred feet ahead."

The defendant admittedly did not blow his horn, and there is abundant evidence from which it can be reasonably and logically inferred that he willfully and wantonly vio-

lated the other applicable statutory provisions just above referred to.

When all of these circumstances are considered, I am unable to see how it can be soundly held that the evidence is susceptible of no other reasonable inference than that the plaintiff was contributorily negligent as a matter of law.

I am by no means certain that I clearly understand the rationale of the majority opinion. If I do understand it, and with all due respect thereto, the conclusions reached seem to rest primarily upon the following statement contained in the opinion:

"The record is clear, however, that the weather conditions did not materially affect the ability of either party to see the other within a reasonable distance."

Having arrived at the stated conclusion, the majority view goes on to liken the instant case to that of *Carma v. Swindler,* 228 S. C. 550, 91 S. E. (2d) 254, where a much younger pedestrian walked across a highway at night and into the path of a vehicle (with brightly burning headlights) which clearly had the right of way, the driver thereof being at the most guilty of no more than simple negligence; and to hold the plaintiff here guilty of contributory negligence as a matter of law. The holding that the last clear chance doctrine is inapplicable is but a furtherance of the holding that the plaintiff was contributorily negligent, whether her negligence be deemed continuing or otherwise. While I shall not attempt to distinguish each of the cases cited in the majority opinion in support of the conclusion reached, it is my view that no one of them is in point, on the facts, with the instant case.

Since to me the majority opinion appears to rest upon the conclusion that weather conditions did not materially affect the ability of either party to see the other within a reasonable distance, let us consider this conclusion as to whether or not such is the only one which can reasonably be inferred from the evidence. As I read the record, I find

no real support for this conclusion, other than the testimony of the defendant himself to the effect that he saw the plaintiff in the driveway before she started across the pavement. His testimony on that particular point is in direct conflict with his statement made immediately following the accident to the effect that he did not see plaintiff until he hit her, and is also in direct conflict with other evidence in the record as to the poor visibility conditions existing at the moment. Yet, as I see it, his testimony on that particular point as to where plaintiff was when he first saw her, has to be accepted as true, to the exclusion of the other evidence favorable to the plaintiff, in order to reach the result of the majority opinion.

Except as to where plaintiff was when he first saw her, most, if not all, of defendant's testimony can reasonably be harmonized, not only with his statement immediately after the accident, but with the other evidence in the record favorable to the plaintiff. His story as to where she was when he first saw her is not only not entitled to any consideration, in the decision of the only issue before us, but it is implausible and, at least to some extent, inconsistent with the rest of his testimony as I shall attempt to demonstrate.

His narrative version was to the effect that he first saw plaintiff when he was one hundred to one hundred fifty feet from the point of impact, traveling at a speed of 45 miles per hour. Of course, the distance was necessarily an estimate, but if we accept the distance of one hundred feet as being correct, simple mathematics shows that he was moving according to his testimony at a speed of 66 feet per second and that the elapsed time from his sighting the plaintiff to the moment of impact was approximately 1.47 seconds. If we allow for normal average reaction time this would have allowed him barely enough time to apply his brakes and swerve to the right, which he did, and such is entirely consistent with his statement that he did not see plaintiff until (just before) he hit her. The elapsed time

is I think, entirely inconsistent with his conflicting statement that he saw her while she was still in the driveway, since I consider it extremely illogical to believe that an old, slow walking woman could have progressed the necessary distance to the point of impact in two seconds or less.

His testimony is further consistent with the conclusion that he *could not* see the plaintiff until possibly two seconds before the impact and that likewise plaintiff *could not* see him until she was virtually or actually in the path of the car. His testimony to the effect that he applied his brakes and swerved to the right and still hit the plaintiff with the front part of his car, at least inferentially the bumper, is consistent with plaintiff's claim that she was well across the road when struck. The determination of what inferences may be reasonably deduced from the evidence in this case involves, to my mind, as a matter of vital import, a consideration of the inferable rate of speed being traveled by the plaintiff in contrast to the many times greater speed being traveled by the defendant.

There is no evidence in the record as to the rate of speed at which plaintiff was walking, either in miles per hour or feet per second, the only evidence being that she was an old woman who could not move rapidly and who could walk only slowly. There being no specific evidence as to her precise rate of speed, the jury could, and this court can, only revert to a common sense approach, relying on the common knowledge and experience of mankind in drawing an inference, or forming an opinion as to the reasonable inferences to be drawn, from the evidence, as to the rate of speed probably or actually being traveled by the plaintiff as she traversed the roadway.

With the millions of Americans who have served in military service during our recent wars, it is a matter of at least fairly common knowledge that the regular marching pace or cadence of troops is one hundred twenty steps per minute. This fact was presumably known by the trial judge and at least some, if not all, of the jurors. The marching

pace of troops, young, vigorous men, being one hundred twenty steps per minute, it is certainly reasonable to infer that this old, slow-walking woman would not have walked at a rate of more than sixty steps per minute, or one step per second. Again, I think it is a matter of common knowledge that the average pace or step taken by an average young and vigorous man is somewhat less than three feet, and such being the case, it is a reasonable inference that this old, slow-walking woman took a pace of not more than approximately eighteen inches, and probably somewhat less, resulting in a speed of about 18 inches per second.

I think that the inferences which I have drawn as to the probable speed of the plaintiff are reasonable and logical, but I have drawn them solely for the purpose of illustrating the point and for that purpose, at least, I think they will suffice. The jury had the opportunity to see and observe the plaintiff, and was in a much better position to draw an inference as to her actual rate of speed than I am. If I have underestimated her speed, such would only proportionately change the illustrations I am about to give.

In view of the evidence to the effect that plaintiff was well across the paved road when struck, I think it a reasonable inference that she had traveled approximately fifteen feet across the eighteen-foot pavement before being struck. At the speed which I have inferred for the purpose of illustration, it would have taken her ten seconds to traverse this distance, which means that the defendant was, at the moment plaintiff decided to cross, 660 feet away in the fog at his claimed rate of speed, or approximately 800 feet away at the maximum speed attributed to him in the evidence.

When she reached the center of the roadway, she still had four seconds to go prior to impact, at which time the defendant would still have been 266 feet away in the fog, at his stated rate of speed, or 320 feet away at the maximum speed attributed to him. These illustrations and distances should serve to point up the implausibility of the defend-

ant's inconsistent, conflicting story that he saw the plaintiff in the driveway before she proceeded to cross. In any event, I think they show that plaintiff's rate of speed must be taken into consideration in determining whether she exercised due care in either starting or continuing her journey across the paved highway. If I have slightly underestimated her speed, the times and distances above given would, of course, be slightly less, but I think not sufficiently less to substantially change the picture.

In this connection, I should mention that certain of the answers of the plaintiff's son would give rise to the inference, as stated in the majority opinion, that the plaintiff was still ten feet from the pavement when he barely glimpsed the automobile approximately 300 feet away. His testimony as a whole, however, is equally susceptible, I think, of the inferences that his mother was ten feet from the pavement when he spoke to her; that she continued to walk and that it was some moments later when he glimpsed the car.

While I do not regard the defendant's story as to seeing the plaintiff still in the driveway as being at all plausible, if we accord it any semblance of truth, the time, which necessarily elapsed between his sighting the plaintiff and the actual impact, afforded the defendant ample opportunity to blow his horn and take other precautions to avoid running down an old woman who was well known to him, and who was incapacitated at least to the extent that she could only walk slowly. Thus, his story on this point, if believed and accepted as true, would only further inculpate him.

Moreover, if defendant's story is to be believed as to seeing plaintiff at any time, location or distance substantially prior to the impact, the question naturally presents itself as to whether or not he had a last clear chance to avoid running her down. With respect to the conduct of the plaintiff and the application of the doctrine of last clear chance, the following inferences seem quite reasonable to me. The

gray, almost white, automobile, approaching her at a rapid rate of speed, without any lights, out of the fog and drizzle, was at least not readily discernible and certainly not clearly discernible until it was immediately upon the scene. In her slow moving progress across the highway, she had the duty of observing the highway in both directions, and even if she were inadvertent in failing to see the car sooner, she still had to reach a point of peril where she could no longer avoid the impact by the simple expedient of stopping. Neither is it reasonable to infer that at that particular moment she was physically capable of extricating herself by jumping out of the way. Whether or not the defendant, at that precise moment, could have by the exercise of due care avoided the tragedy was clearly, to my mind, an issue for the jury.

It is worthy of note that in the case of *Bishop v. Atlantic Coast Line R. Co.,* 213 S. C. 125, 48 S. E. (2d) 620, relied upon by the majority for the application of the doctrine of continuing negligence, the facts were the exact opposite of the instant case with relation to speed, visibility and distance. There plaintiff's intestate was the driver of a relatively swiftly moving truck, with a clear view of a railroad crossing for a completely adequate distance, and it was sought to charge a very slow moving locomotive with a last clear chance to have avoided the catastrophe.

To summarize my views and conclusions, I consider that all of the evidence, particularly when viewed in the light most favorable to the plaintiff, is clearly susceptible of inferences by an impartial jury which would support a recovery by the plaintiff on any one, or more, of several theories, as follows:

(a) The jury could have found that the plaintiff was not negligent at all, but that the sole proximate cause of the tragedy was the careless, willful and wanton conduct of the defendant in numerous particulars.

(b) The jury could have concluded that the plaintiff was guilty of nothing more than mere inadvertence and

that she was not barred from recovery because of the willful and wanton conduct of the defendant in numerous particulars.

(c) The jury could have inferred that, while plaintiff may have been guilty of some inadvertence in commencing her journey across the highway, that after she had reached a position of peril she could not have, by the exercise of due care, extricated herself, while, on the other hand, the defendant by the exercise of due care could have and should have avoided running her down.

For the foregoing reasons, I think that the trial judge correctly submitted this case to the jury on all issues, including the last clear chance doctrine, and that the judgment should be affirmed.