Harley Eugene ISGETT, Administrator of the Estate of David Harley Isgett, Jr., deceased, Appellant,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, Appellee.

No. 9130.

United States Court of Appeals Fourth Circuit.

Argued Nov. 7, 1963.

Decided Feb. 20, 1964.

 

Benny R. Greer, Darlington, S. C.
(David W. Harwell, Florence, S. C.,
James P. Mozingo, III, and Greer &
Chandler, Darlington, S. C., on brief),
for appellant.

Hugh L. Willcox, Florence, S. C. (Willcox, Hardee, Houck, Palmer & O'Farrell,
Florence, S. C., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and BUTZNER, District
Judge.

ALBERT V. BRYAN, Circuit Judge.

Stalled at night on the tracks of the
Atlantic Coast Line Railroad Company
at a highway crossing near Florence,
South Carolina, the car driven by David
Harley Isgett, Jr. was struck by a train,
killing him, his mother and another occupant of the automobile. Upon completion of the evidence offered by his administrator, in this diversity action against
the Railroad for his death, the District
Court directed a verdict for the defendant company.

The Court concluded that, regardless
of any fault of the Railroad, recovery
was barred under the laws of South Carolina by the driver's contributory negligence in remaining in the car despite an
opportunity to abandon the car and so
escape destruction. When antecedent
negligence ascribed to the Railroad in
the maintenance of the crossing's surface
is considered together with the conduct
of the deceased, we think resolution of
the question of contributory negligence
was for the jury.

The place of the catastrophe, known as
Burrough Road Crossing, was not far
from the decedent David Isgett's home
and was quite familiar to him. Here the
double tracks of the main line run approximately north and south; the road

east and west. The crossing was unpaved, but on each side and within 20 or
30 feet of the rails, the roadway had
been prepared for paving. Under the
State statutes the obligation to maintain
such part of the road as traversed its
right-of-way was upon the Railroad.
The authorities had given the Railroad
notice of its obligation to join with them
in constructing the new pavement. As
the road went over the tracks it had a
width of about 18 feet, but up to the
tracks it was some 29 feet wide on both
sides.

On the evening of September 24, 1960,
David drove from his home, a half-mile
away west of the tracks, to a store on
the east side, and returned over the
crossing between 8:30 and 9:00 o'clock
P.M. While crossing, apparently he
drove too far to the left and went off the
roadway. The left front wheel of his
car became lodged against the outside
rail of the southbound track, that is
against the westernmost or farthest rail.
There his engine stalled with the car extending to the rear far enough to foul
the northbound track.

While he was in this position a diesel
locomotive with a mail and passenger
train was en route from the south (his
left) not far away, approaching at a
speed of 80 m. p. h. For two miles down
the track to the south visibility was unobstructed. Without question, the locomotive was projecting an adequate headlight. For the train to cover the two
miles required slightly more than a
minute and a half. Thus, if David's car
had stalled at the moment the diesel
moved into sight, the occupants of his
car had a minute and a half to get out
of the way. Inexplicably, they did not.

The engineer testified without contradiction that he and his fireman were
keeping an alert lookout ahead; that he
observed a light, apparently at the Burrough Crossing, when approximately two
miles away; that the body of the car was
not then visible to him; that the light
was shining westwardly and not towards
him; that the light appeared to be on the
southbound track, not obstructing his

path; that there were several crossings before he reached the Burrough, and for all of them, as well as for the Burrough, he sounded the requisite signals by a whistle. Not until he was within 700 feet of Burrough Crossing was the dark automobile discernible in the headlights of his engine; and at that moment he applied his emergency brakes but at his speed it was too late to avoid collision.

■ Several witnesses living close by stated that no signals were given by the locomotive as it neared the crossing. The testimony was in severe conflict on this question, but on consideration of the instant motion, we must assume as did the District Judge that the signals were not given.

The principal negligence of which the Railroad was accused was: (1) failure to sound the crossing signals prescribed by the South Carolina Code of Laws, (2) failure to construct and maintain the Burrough Crossing in a safe and adequate condition, and (3) failure to avoid the collision after it had the opportunity. As well as denying each of the charges, the Railroad answered that David had been guilty of gross neglect in driving off the roadway and in staying in the car after he saw, or should have seen, the onrushing train.

■ I. Section 58–743 of the South Carolina Code requires a locomotive to be equipped with a steam or air whistle, to sound it at least 500 yards before crossing a public highway or other traveled place, and to keep whistling until the engine has passed. In § 58–1004 it is further declared:

> "Injuries at crossings; penalty and damages.—If a person is injured in his person or property by collision with the engine or any car of a railroad corporation at a crossing and it appears that the corporation neglected to give the signals required by the General Railroad Law and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision or to a fine recoverable by in-

dictment, unless it is shown that in addition to a mere want of ordinary care the person injured or the person having charge of his person or property was at the time of the collision guilty of gross or wilful negligence or was acting in violation of the law and that such gross or wilful negligence or unlawful act contributed to the injury."

Applied here, the Coast Line would be responsible for the death of David Isgett unless it could show that he was guilty of gross or wilful negligence. However, the force of the statute is conditioned upon proof that the absence of signals was an effectively contributing factor to the disaster, and this the District Judge determined the plaintiff administrator had not established.

The Supreme Court of South Carolina enunciated this rule of law in Truett v. Atlantic Coast Line Railroad Co., 206 S.C. 144, 33 S.E.2d 396, 398 (1945). In speaking to the crossing statutes, it said:

> "With reference to the specification that respondent failed to give the crossing signals required by Section 8355, Code of 1942 [now § 58–743], the neglect to do so would constitute negligence per se. However, to afford a basis for the recovery of damages, 'it must appear that the failure to give the signals contributed as a proximate cause of the injury, but from such failure to give the signals a disputable presumption arises in the first instance that such failure was the proximate cause thereof.' * * * The ringing of the bell or blowing of the whistle could not have given appellant any more warning or information than he already had. Appellant's testimony completely *rebuts any presumption* and shows conclusively that there was no causal connection between the neglect to give the statutory signals and the collision at the crossing." (Accent added.)

Obviously, the sounding of signals by the locomotive when only 500 yards

away from the Burrough Crossing and coming at 80 m. p. h. would have told David Isgett nothing more than the horror he already knew. At that moment the shriek of the whistle would have been no more than a perfunctory and sadistic warning of imminent death. The tracks themselves had been the initial admonishment of peril; the oncoming locomotive confirmed it. Omission of the signal therefore played no part in the tragedy.

■ II. On the contention of last clear chance the District Judge assumed, arguendo, the evidence adequate to tender this replication notwithstanding there was "serious doubt" of it. He did not, however, review that phase of the evidence because he was convinced that the contributory negligence of David Isgett overrode and sterilized all evidence of negligence in the engineer's conduct. We share the District Judge's doubt. Indeed, in our opinion the evidence was totally deficient on the assertion of last clear chance. The engineer could not have been expected to interpret a naked light on the southbound track as an obstruction of his way. It was on the rail farthest from him. Especially as the car was black, he could not anticipate that the light signalled an object of such length behind as to protrude into the northbound way. There was just no last clear chance.

■ III. Upon the physical condition of the crossing the plaintiff administrator charges delinquency on the Railroad's part in meeting the requirement of the South Carolina statute then in effect, § 58–841, reading as follows:

"Operators of railways shall construct and maintain grade crossings of highways.—All operators of railways which are crossed at grade by a public highway shall construct and maintain grade crossings meeting the requirements of the authorities responsible for such highways."

It is contended that David's car left the roadway and became wedged in the track due to the Railroad's neglect to provide a crossing of the same width as the road of which it was a part. The District Judge recognized that the condition and structure of the crossing "would be some evidence of negligence on the part of the Railroad Company". To this the Railroad rejoined that the condition of the crossing surface was not a causative factor because: (1) it was of ample width—18 feet—to accommodate any vehicle, and (2) David was at fault in driving to the lefthand edge of the crossing when there was ample passage to his right, that is, to the right of the road's center line.

Here was an issue of want of care by either or both Railroad and deceased and seemingly one for the jury to resolve. However, the District Judge felt that David's persistence in keeping to the car was such contributory negligence as to render prior acts or omissions of both the Railroad and himself too remote to be considered proximate causes of the misfortune.

While we see considerable logic to support his view, we do not concur in it. With the finding that there was, to repeat, "evidence of negligence on the part of the Railroad Company" in respect to the physical features of the crossing, the reason why David's car was where it was became an important and explorable issue. If the Railroad was to blame, then the failure of David to get out of his car is not readily isolatable as the exclusive cause of his end. Again, if the Railroad put him in the fatal predicament, it had the burden, at the risk of an adverse verdict, to prove his freedom to extricate himself. On the other hand, if David imperilled himself, his unexplained confrontation of death could defeat the plaintiff's efforts at recovery. These were jury questions precluding direction of a verdict.

For these reasons the case must be sent back for a new trial consistent with the views we have expressed.

Reversed and remanded.